The CITY OF DOVER, Defendant and Third-Party Plaintiff Below, Appellant,

and

Leon M. Porter, Sr. and June Porter, Individually and as Next Friends to the Minor Plaintiff Brian K. Porter, Plaintiffs Below, Appellants,

v.

INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION, Defendant Below, Appellee,

and

Laramore Douglass & Popham of New York, Inc., Third-Party Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: June 17, 1986.
Decided: Sept. 18, 1986.

Robert K. Pearce (argued) of Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, for defendant and third-party plaintiff-appellant City of Dover.

I. Barry Guerke (argued) of Parkowski, Noble & Guerke, P.A., Dover, for plaintiffs-appellants Leon M. Porter, Sr. and June Porter, Individually and as next friends to the minor plaintiff Brian K. Porter.

Wayne N. Elliott and Michael P. Kelly (argued) of Prickett, Jones, Elliott, Kristol

& Schnee, Wilmington, for defendant-appellee Intern. Tel. and Tel. Corp.

Howard M. Berg and Robert S. Goldman (argued) of Howard M. Berg & Associates, P.A., Wilmington, for third-party defendant-appellee Laramore, Douglass & Popham of New York, Inc.

Before CHRISTIE, C.J., MOORE and WALSH, JJ.

WALSH, Justice:

This appeal arises from a personal injury suit brought by Leon and June Porter individually and as the next friends of their minor son, Brian K. Porter, who sustained personal injuries climbing an electric utility pole. The Superior Court action was filed on September 20, 1983, against Delmarva Power and Light Company ("Delmarva"), the City of Dover ("Dover"), International Telephone and Telegraph Corporation ("IT & T"), and Delaware Home Builders Corporation. Defendants Dover and IT & T filed third party complaints against Laramore, Douglass and Popham of New York, Incorporated ("LD & P"). Subsequently, IT & T moved for summary judgment against the Porters, and LD & P moved for summary judgment against third-party plaintiffs Dover and IT & T, arguing that claims against IT & T and LD & P were barred by 10 *Del.C.* § 8127, which defines the claim period for actions based on alleged deficiencies in the construction of improvements to real property. The Superior Court granted both motions for summary judgment and held that the Porters' claim against IT & T and Dover's third-party claim against LD & P were barred by 10 *Del.C.* § 8127.[1]

The City of Dover and the Porters have appealed the Superior Court's decision, arguing that these claims are not barred by 10 *Del.C.* § 8127 and, in any event, that 10 *Del.C.* § 8127 is unconstitutional. We agree with the Superior Court's conclusion

1. Later, plaintiffs filed an application pursuant to Supreme Court Rule 42 for leave to appeal the interlocutory order granting summary judgment to IT & T. The Superior Court then amended its earlier decision, directing entry of final judgment with respect to matters decided in its December 5, 1985, opinion.

that 10 *Del.C.* § 8127 does not violate the Delaware Constitution and, as applied here, bars these claims.

## I

The facts which underlie the controversy are not in dispute. On October 12, 1981, the minor plaintiff was injured when he climbed a Dover electric utility pole and received an electrical shock from wires attached to the pole. The pole was one of several installed in the City of Dover as part of an interconnection scheme between the Dover electrical system and the Delmarva system.

IT & T had manufactured and delivered the utility poles to Dover at some time before October 1, 1974. The poles were manufactured according to the specifications of LD & P. Although Dover owned the utility pole in question, both Dover and Delmarva maintained electrical lines on it. IT & T had no contacts with the pole after it was delivered on September 19, 1974, and LD & P completed all of its services in connection with design of the pole system prior to February 13, 1977, the date on which it received final payment. At the time of the accident, the pole was located on land owned by Delaware Home Builders Corporation within a utility easement originally granted to Delmarva, but later transferred to Dover.

The Porters' underlying action was premised on the doctrine of attractive nuisance and sought recovery from Dover, Delmarva, IT & T, and Delaware Home Builders Corporation.

The Porters and Dover mount a broad ranging attack on the Superior Court's grants of summary judgment. They allege that 10 *Del.C.* § 8127 does not bar their claims against IT & T and LD & P because (1) IT & T is a materialman not protected by the statute; (2) the utility pole is not an "improvement" to real property or a "structure" within the meaning of a statute, and (3) the utility pole falls within the "residential purposes" exception to the statute. The Porters also argue that 10 *Del.C.* § 8127 is unconstitutional because it violates the Delaware Constitution's prohibition of "special legislation" and because its title does not clearly identify the subject matter of its contents.

## II

■ The Delaware "Builder's Statute"[2] provides a six year limitations period on

---

**2.** 10 *Del.C.* § 8127 provides in pertinent part:

(b) No action, whether in or based upon a contract (oral or written, sealed or unsealed), in tort, or otherwise, to recover damages or for indemnification or contribution for damages, resulting:

(1) From any alleged deficiency in the construction or manner of construction of an improvement to real property and/or in the designing, planning, supervision and/or observation of any such construction or manner of construction; or

\* \* \* \* \* \*

(3) From any alleged personal injuries arising out of any such alleged deficiency;

\* \* \* \* \* \*

shall be brought against any person performing or furnishing, or causing the performance or furnishing of, any such construction of such an improvement or against any person performing or furnishing, or causing the performing or furnishing of, any such designing, planning, supervision, and/or observation of any such construction or manner of construction of such an improvement, after the expiration of 6 years from whichever of the following dates shall be earliest:

\* \* \* \* \* \*

(d) The date when payment in full has been received by the person against whom the action is brought for the particular phase of such construction or for the particular phase of such designing, planning, supervision, and/or observation of such construction or manner of such construction, as the case may be, in which such alleged deficiency occurred;

(e) The date the person against whom the action is brought has received final payment in full, under the contract for the construction or for the designing, planning, supervision, and/or observation of construction, as the case may be, called for by contract;

\* \* \* \* \* \*

(h) For alleged personal injuries also, the date upon which it is claimed that such alleged injuries were sustained; or after the period of limitations provided in the contract, if the contract provides such a period and if such period expires prior to the expiration of

actions for damages, indemnification, or contribution for damages resulting from personal injuries arising out of any deficiency in the construction of an improvement to real property or the design, planning, supervision, or observation of any such construction. 10 *Del.C.* § 8127; *Becker v. Hamada,* Del.Supr., 455 A.2d 353, 354 (1982). The limitations period begins to run at the earliest of several designated dates, irrespective of the date of the injury. The statute in question is a true statute of repose. It prevents a claim from arising, whereas a statute of limitations bars an accrued cause of action. *Cheswold Volunteer Fire Co. v. Lambertson Construction Co.,* Del.Super., 462 A.2d 416, 419 (1983), aff'd., Del.Supr., 489 A.2d 413 (1984). Thus, "the passing of the six-year period deprives the injured party of a legal right to redress." *Id.* 489 A.2d at 420.

■ The statute protects the parties "performing or furnishing any construction of an improvement to real property, as well as those causing to perform or furnish, any design, plan, supervision of or observation of any construction of an improvement," but does not protect suppliers who do not perform or furnish construction. *Becker* at 354–355; *See Cheswold,* 462 A.2d at 420. Although comparable statutes in other states protect both builders and suppliers,[3] the Delaware statute does not protect suppliers even if they design, supervise, plan, or construct the product as part of the improvement. *Becker* at 355.

■ In this case, IT & T manufactured the utility pole according to specifications supplied to it by LD & P, but did not install

the pole at the site where the injury occurred. Despite this latter fact, the Superior Court correctly determined that IT & T had satisfied the statute's "furnishing construction" requirement.[4] IT & T was more than a mere supplier of utility poles, because IT & T fabricated the utility poles it delivered to Dover. *Compare Becker* at 356 ("furnishing construction" requirement not met where party supplied construction materials but engaged in no act of building, erection, devising and forming, fabrication or composition). Therefore, IT & T satisfied the "furnishing construction" requirement of the statute and cannot be disqualified as a mere supplier.

■ The statute further provides that the builder furnishing construction must furnish "improvements" to the real property. IT & T has furnished improvements here. 10 *Del.C.* § 8127(a)(2) provides: "'Improvement' shall include buildings, highways, roads, streets, bridges, entrances and walkways of any type constructed thereon, and other structures affixed to and on land, as well as the land itself, except that such term shall not include ... construction primarily for residential purposes and uses." As a matter of statutory construction, the words "shall include" are properly interpreted to indicate that the term "structure" encompasses items not expressly enumerated in the statute. *See* C. Dallas Sands, *Sutherland Statutory Construction* § 47.07 4th ed. (1984). Thus, the doctrine of *ejusdem generis* does not require that the term "structure" be limited in its scope to the things specifically named in section 8127(a)(2). The listing in the statute is exemplary, not exclusive.

2 years from whichever of the foregoing dates is earliest.

(c) Nothing in this section shall extend or lengthen, nor shall anything in this section be construed or interpreted as extending or lengthening, the period otherwise prescribed by the laws of this State for the bringing of any action covered by this section.

3. *See, e.g.,* Ind.Code Ann. § 34–4–20 (Burns 1973). *But see Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715 (1978).

4. The Superior Court based its findings on the liberal interpretation of this requirement by courts interpreting "builder's statutes" in other jurisdictions, and on an unreported Superior Court decision holding that the supplier of a furnace essential to the functioning of a building was protected under section 8127 even though the furnace had been completely manufactured before delivery.

*See Gage v. City of Wilmington*, Del. Supr., 293 A.2d 555, 557 (1972). Accordingly, the utility pole can be considered a "structure" within the meaning of the statute. Since it is unquestionably affixed to land, it can be considered an "improvement" covered by the statute.

■ Dover argues that the term "improvement" includes only structures that actually enhance the value of the property and/or make the property more useful. However, the statutory definition of "improvement" clearly does not require such value enhancement. 10 *Del.C.* § 8127(a)(2). Therefore, "structures" covered by the statute need not meet a "value added" test to be "improvements," even though such a test may prove useful in determining the parameters of the statute. *See Montaup Electric Co. v. Ohio Brass Corp.*, 561 F.Supp. 740 (D.R.I.1983); *Brown v. Jersey Central Power & Light Co.*, N.J.Super., 394 A.2d 397 (1978); *Mullis v. Southern Company Services, Inc.*, Ga.Supr., 296 S.E.2d 579, 583–584 (1982).

■ Finally, the term "improvement" specifically excludes "construction primarily for residential purposes and uses." 10 *Del.C.* § 8127(a)(2). The plain meaning of the statute is that this exception exempts buildings and structures used for residential purposes. Although the utility pole was intended to be part of a distribution system which ultimately provided electricity for residential purposes, the system did more than merely serve residential customers. The pole's function thus does not bring it within this "residential use" exception to the statute so as to exclude it from the definition of "improvements."

### III

The constitutionality of the Delaware Builder's Statute has been upheld against challenges based on due process and equal protection guarantees of the state and federal constitutions. *Cheswold Volunteer Fire Co. v. Lambertson Construction Co.*,

Del.Supr., 489 A.2d 413 (1984). In this appeal, appellants argue that the statute constitutes a special law in violation of Article II, Section 19 of the Delaware Constitution, and that the statute violates Article II, Section 16 of the Delaware Constitution because the title of the enacting legislation did not clearly identify its subject matter. We reject both of these challenges.

■ Section 19 of Article II of the Delaware Constitution prohibits "special" laws relating to fences, live stock, ditches, the creation or changing of boundaries of school districts, and roads. This prohibition reaches only legislation that is both "special" and concerns one of the above subject areas. *Tusso v. Smith*, 39 Del.Ch. 198, 162 A.2d 185, 187 (1960); Del. Const. Art. II, § 19. In this appeal, we need not reach the question of whether the Builder's Statute constitutes a "special" law because the Statute as applied in this case does not relate to fences, live stock, ditches, school districts, or roads. Thus, the prohibition against "special" laws does not prevent application of the Builder's Statute in this case.

Section 16 of Article II of the Delaware Constitution prohibits a bill or joint resolution from embracing more than one subject, which shall be expressed in its title. Del. Const. Art. II, § 16. The constitution simply requires that the title not be misleading. *duPont v. Director of Division of Revenue of Department of Finance*, Del.Super., 329 A.2d 158 (1974) *aff'd* Del. Supr., 347 A.2d 653 (1975). A bill's title need not synopsize the bill's contents so long as the title would lead a reasonable person interested in the legislation to inquire into the body of the bill. *duPont*, 347 A.2d at 655; *Opinion of the Justices*, Del.Supr., 315 A.2d 580 (1974). Here, the title statement that this bill[5] was " ... a new section relating to the limitation of actions ..." satisfies the constitutional standard although the title does not clearly

---

5. 57 Del. Laws C. 568.

indicate whether the statute is properly characterized as a statute of limitations or a statute of repose. The term "limitations of actions" is broad enough to embrace both types of restrictions.

The Builder's Statute does not embrace more than one subject. A bill will be found not to contain more than one subject where "the provisions of the act relate directly or indirectly to the same subject [and] are naturally connected." *Clendaniel v. Conrad*, Del.Supr., 83 A. 1036, 1042 (1912). All of the provisions of 10 *Del.C.* § 8127 relate to the Statute's bar on actions against those who improve real estate or the structures located thereon. We thus find that 10 *Del.C.* § 8127 does not violate Article II section 16 of the Delaware Constitution.

For the foregoing reasons, we uphold the constitutionality of the Delaware Builder's Statute and find no error in the judgment of the Superior Court barring the Porters' claim against IT & T and Dover's third-party claim against LD & P under 10 *Del.C.* § 8127.

AFFIRMED.