265 N.J. Super. 603 (1992)
628 A.2d 386
WARREN VAN SLYKE AND BARBARA VAN SLYKE, HIS WIFE, PLAINTIFFS,
v.
WORTHINGTON, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided December 18, 1992.
*605 Linton W. Turner for defendant, Carrier Corp. (Crawshaw & Mayfield, attorneys).
Douglas Brierley for defendant, Worthington Corp. (Schenk, Price, Smith & King, attorneys for Lisa K. Pantel; Douglas Brierley, on the brief).
Patrick Bartels for plaintiffs (Garruto, Galex and Cantor, attorneys).
*606 LERNER, J.S.C.
The case before the court is on a motion for summary judgment filed on behalf of the defendant, Carrier Corporation to dismiss a complaint based upon N.J.S.A. 2A:14-1.1, the ten-year statute of repose for actions arising out of defective design or construction of improvements to real property. The heating, ventilation and air conditioning units located in the buildings where plaintiff worked and from which he alleges exposure to asbestos were installed more than ten years prior to April 23, 1987, the date this action was commenced.[1] Therefore, were N.J.S.A. 2A:14-1.1 to apply to this case, plaintiffs' suits would be barred. However, plaintiff challenges the application of the statute of repose in that plaintiff's asbestos exposure occurred on properties located exclusively in New York State. Plaintiff therefore argues that New York State's substantive law applies to this case where no statute of repose exists. Resolution of this issue therefore will depend upon a choice of law question.
On July 31, 1987 plaintiff, Warren Van Slyke was diagnosed by Dr. Susan Daum as suffering from pleural and pulmonary asbestosis related to his asbestos exposure. Mr. Van Slyke and his wife, Barbara Van Slyke, filed the instant suit alleging that Mr. Van Slyke was exposed to asbestos containing thermal insulation products between 1946 and 1984 while engaged in the repair and maintenance of various heating and cooling units all of which were located within buildings in New York City, New York. Mr. Van Slyke is and has been a New Jersey resident since 1964.
Defendant, Carrier Corporation is incorporated under the laws of Delaware and has its principal place of business in Syracuse, New York.

*607 -I-
The preliminary issue to be resolved before reaching the conflicts of law question is whether N.J.S.A. 2A:14-1.1 is a matter of substantive or procedural law of this state. N.J.S.A. 2A:14-1.1 reads:
No action whether in contract, tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.
This State's Supreme Court has heretofore recognized both the procedural and substantive aspects of the statute of repose.

N.J.S.A. 2A:14-1.1 is a ... hybrid. On the one hand, it bars a right of action from coming into existence if the accident occurs subsequent to the ten-year period; but as to those events happening before the statutory period has run, the provision disallows, like any other statute of limitations, the institution of suit after the prescribed ten years has expired. [O'Connor v. Altus, 67 N.J. 106, 121-122, 335 A.2d 545 (1975)].
New Jersey Courts have recognized the substantive aspects the statute of repose by distinguishing it from statutes of limitations. Statutes of limitation and repose are distinguishable by their method of operation. The typical statute of limitations bars a remedy, in the sense that once a cause of action accrues, a plaintiff has a limited amount of time within which to file suit. If the suit is not commenced within the prescribed period of time, the party or parties loose the ability to seek relief otherwise available. In this manner the typical statute of limitations is a rule of procedure. But, the New Jersey Supreme Court has also found that N.J.S.A. 2A:14-1.1, is not a conventional statute of limitations "at all, at least in the traditional sense of the term." E.A. Williams v. *608 Russo Development Corp., 82 N.J. 160, 167, 411 A.2d 697 (1980). The time within which suit may be brought under N.J.S.A. 2A:14-1.1 is wholly unrelated to the accrual of a cause of action. The statute of repose "doesn't "bar" a remedy in the sense of providing an injured person a certain time to institute suit after the "accrual" of a "cause of action"." Id. "Rather, ... the statute [of repose] prevents what might otherwise be a cause of action from ever arising...." after a ten year period. Id.; O'Connor v. Abraham Altus, 67 N.J. 106, 121-122, 335 A.2d 545 (1975); Rosenberg v. Town of North Bergen, 61 N.J. 190, 199, 293 A.2d 662 (1972). As such, "[t]he function of the statute is thus to define substantive rights than to alter or modify a remedy." Rosenberg, supra, at 199, 293 A.2d 662.
Statutes of limitations and statutes of repose may also be distinguished by their purpose. Statutes of limitations are designed to stimulate litigants to prosecute their suits diligently and to avoid burdening our courts with stale claims. Rosenau v. City of New Brunswick, 51 N.J. 130, 136, 238 A.2d 169 (1968). On the other hand the statute of repose does not serve to limit stale claims as such. Rather, the statute literally confers immunity ten years after the performance of services or construction when an injury occurs due to a defect or unsafe condition, regardless of any intended useful life of a product. McCalla v. Harnischfeger Corp., 215 N.J. Super. 160, 166, 521 A.2d 851, certif. den., 108 N.J. 219, 528 A.2d 36, 37 (1987).
It is against this backdrop the statute must be analyzed. In the case before the court, were the statute to be used as defendant suggests, plaintiffs would simply have no cause of action. The harm that has occurred would be damnum absque injuria  a wrong for which the law provides no remedy against this defendant. Rosenberg, supra, at 199, 293 A.2d 662. Therefore, the Van Slykes would have had to file suit many years prior to 1987 filing date of their complaint to have had any cause of action against defendant at all. This is so because the heating, ventilation and air conditioning systems that Mr. Van Slyke maintained *609 and serviced were made part of the building where plaintiff worked more than ten years prior to the commencement of this action.
The court finds that the function of the statute under these facts is to define substantive rights rather than to alter or modify a remedy. Id. I would have no problem finding for defendant, at least to the extent that the statute is being used procedurally, if they could show that plaintiffs' cause of action arose before the expiration of the 10 year period and that plaintiffs failed to institute their suit within the 10 year statutory period. Used in this sense, the statute would in effect bar a remedy.
Of course, irrespective of the manner in which N.J.S.A. 2A:14-1.1 is applied, the plaintiffs must still have filed their suit within two years of the accrual of the cause of action. O'Connor, supra, at 122, 335 A.2d 545; N.J.S.A. 2A:14-2. However, N.J.S.A. 2A:14-1.1 can serve to shorten that period because in any event the suit must be brought within ten-years of the construction or improvement is completed. Under the ten-year provisions in N.J.S.A. 2A:14-1.1, the plaintiff who brings an action immediately upon discovery of injury may still be barred from recovery.
Where other courts have addressed the issue of whether statutes of repose are procedural or substantive, the majority have taken the latter view. See Menne v. Celotex Corporation, 722 F. Supp. 662, 666 (D.Kan. 1989); see also Meyers v. Hayes Intern. Corp., 701 F. Supp. 618, 623-624 (M.D.Tenn. 1988) (citing cases). In, President and Directors of Georgetown College v. Madden, 505 F. Supp. 557 (D.Md. 1980), aff'd in part and appeal dismissed in part, 660 F.2d 91 (4th Cir.1981), the United States District Court for the State of Maryland had before it the question whether a District of Columbia statute similar to N.J.S.A. 2A:14-1.1 was to be considered a matter of procedural or substantive law. The court opined that there exists an exception to the general rule that a statute of limitations is procedural where the statute "bars the rights and not merely the remedy." President and Directors of Georgetown College, supra, at 571. The court further held for *610 choice of law purposes, that the District of Columbia statute of repose is a substantive grant of immunity. Id. at 574-75.
In sum, because the time period within which a suit must be brought under N.J.S.A. 2A:14-1.1, begins to run immediately upon completion of construction or the furnishing of services related to an improvement in real property, it is unrelated to the accrual of any cause of action. Thus, used in the manner which defendant suggests, the statute does not operate to bar a remedy; but, prevents a cause of action from ever arising. Furthermore, N.J.S.A. 2A:14-1.1 acts as a grant of immunity for those within the class protected by the statute. For these reasons the statute of repose is considered to be part of this State's substantive law for purposes of the choice of law analysis.

-II-
The next issue to be resolved is, using the conflicts of law rules of this state, whether the substantive law of New York or that of New Jersey should apply to this case.
The traditional rule for determining choice of law in tort cases had been lex loci delicti; that is, the law of the place where the harm occurred. E.g., Marshall v. Geo. M. Brewster & Son, Inc., 37 N.J. 176, 180, 180 A.2d 129 (1962). Despite the benefits of certainty and predictability, New Jersey has chosen to reject that rule, recognizing that the mechanical application of lex loci delicti to choice of law problems may work an unjust result in a particular case. See, e.g., Mellk v. Sarahson, 49 N.J. 226, 228-29, 229 A.2d 625 (1967). Consequently, this State has adopted the more flexible governmental-interest analysis in choice-of-law decisions. E.g., Pfau v. Trent Aluminum Co., 55 N.J. 511, 514-15, 263 A.2d 129 (1970); Mellk v. Sarahson, supra, at 229-31, 234-35, 229 A.2d 625. Under that test, the determinative law is that of the state with the greatest interest in governing the issue. Veazey v. Doremus, 103 N.J. 244, 248, 510 A.2d 1187 (1986). This determination involves a two-step analysis. The first step is to determine whether a conflict exists between the law of the interested states *611 on a case by case basis. Id. Where a conflict exists, "the next step is to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." Id. A state does not possess an interest in having its law apply where its contacts are not related to the policies underlying its law. Id.; see also, Pfau v. Trent Aluminum Co., supra at 521-22, 263 A.2d 129; Mellk v. Sarahson, supra, at 230, 229 A.2d 625.
This case clearly presents a conflict of laws, in that New Jersey has a statute of repose for builders and architects, and New York does not.
Although the legislative history of N.J.S.A. 2A:14-1.1 reveals little, in both O'Connor v. Altus, supra, at 121, 335 A.2d 545 and Rosenberg, supra, at 194-198, 293 A.2d 662 several considerations have been advanced in support of similar statutes. See also, Comment, "Limitation of Action Statutes for Architects and Builders," 18 Catholic U.L.Rev. 361 (1969).
The first development in the law that coincided with the adoption of the statute was the expansion of the application of the "discovery rule" to new types of tort litigation. E.A. Williams v. Russo Development Corp., supra, at 165, 411 A.2d 697. The result was to lengthen the period of time for the accrual of a cause of action sounding in tort. Id. This led to concern by "those involved in the design and construction of buildings and other improvements to real property ... that their potential liability for injuries caused by defective workmanship would last indefinitely, inasmuch as many defects would often not be discovered or give rise to a claim for damages until an injury had in fact occurred." Id.
Another trend in the law that likely contributed to the adoption of N.J.S.A. 2A:14-1.1 was the abrogation of the "completed and accepted" rule. O'Connor v. Altus, supra, at 117, 335 A.2d 545. Under that rule an architect's or a contractor's liability for negligence terminates, as a matter of law, when the work has been completed and accepted by the owner or employer. Rosenberg, *612 supra, at 197, 293 A.2d 662. Thus, the result was to enlarge greatly the potential liability of architects and contractors beyond the time when the work was completed and accepted. O'Connor v. Altus, supra, at 118, 335 A.2d 545.
The O'Connor decision pointed to a third trend which probably further influenced the passage of N.J.S.A. 2A:14-1.1. This was the decision of Schipper v. Levitt & Son, Inc., 44 N.J. 70, 207 A.2d 314 (1965). In Schipper, the New Jersey Supreme Court held that a mass developer of houses could be held liable in negligence and in strict liability for injuries to third party caused by a defect in the plumbing system in a house. Therefore, the third development in the law of this state were court decisions that served to broaden the potential liability of builder-vendors of homes. O'Connor v. Altus, supra, at 119, 335 A.2d 545.
These three unrelated but coinciding trends indicate that the Legislature was concerned with the potential for endless liability continuing throughout the professional's life, and the prejudice in defending ancient claims. In addition, the Legislature must have also recognized that under New Jersey law an injured party still retains his remedy against the property owner. See, O'Connor v. Altus, supra, at 123, 335 A.2d 545. By choosing to protect the particular class that it did i.e. builders and architects, the Legislature was probably seeking to avoid the stifling of economic development in New Jersey, and also New Jersey real estate activity which could result from the increased exposure to tort liability.
As stated earlier, New York State has not enacted a statute of repose with regard to builders and architects. Arguably, because New York has not enacted a statute of repose, this expresses a state policy that builders and architects and the like be held responsible in perpetuity for personal injuries caused by defective planning or construction. This court, is hesitant to impute such a policy judgement to legislative inaction. However, I must assume that the New York legislature is aware of the factors which have prompted some 40 states to enact legislation similar to N.J.S.A. *613 2A:14-1.1. See Brown v. Central Jersey Power & Light Co., 163 N.J. Super. 179, 193, 394 A.2d 397 (1978).
Insofar as the contacts of each state with the parties and the litigation are concerned, New Jersey's relevant contacts are as the forum and as the place of residence of the plaintiff. As the forum, this court recognizes that New Jersey has to deal with the inherent proof problems and prejudice often associated with claims that arise long after the wrongful act. However, this court is adequately equipped to deal with suits filed many years after the wrongful act of a defendant has occurred as it must do so in most asbestos cases where the injuries often have a latency period of 15 to 50 years.
Furthermore, as a domiciliary and resident of New Jersey this State has an interest in protecting the compensation rights of the plaintiffs. See Pine v. Eli Lilly & Co., 201 N.J. Super. 186, 192, 492 A.2d 1079 (App.Div. 1985); Deemer v. Silk City Textile Mach. Co., 193 N.J. Super. 643, 651, 475 A.2d 648 (App.Div. 1984). Contrary to the defendant's assertions, the fact that plaintiff is a domiciliary of this State does not automatically warrant the application of New Jersey substantive law. See Eger v. E.I. Du Pont DeNemours Co., 110 N.J. 133, 539 A.2d 1213 (1988). Nor is the fact that a business is either incorporated under the laws of New Jersey or doing business in this state enough to require this court to apply New Jersey substantive law. See Deemer v. Silk City Textile Mach. Co., 193 N.J. Super. 643, 475 A.2d 648 (App.Div. 1984).
With the caveat that it is the qualitative, not the quantitative, nature of a state's contacts that ultimately determines whether its law should apply, New York's contacts with the parties and the litigation must be examined. See Veazey v. Doremus, supra, at 248, 510 A.2d 1187 quoting Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 32 (3d Cir.1975). New York's relevant contacts are as the situs of the alleged tortious conduct and injury and as the principle place of business of the Defendant, Carrier Corporation. In the case at bar, New York has an interest in protecting people *614 from personal injuries sustained in buildings in New York. Furthermore, New York has a great interest in regulating the construction industry within its own borders. Conversely, while New Jersey may have an interest in protecting architects, builders, and the like for work performed within its borders to encourage their activity within the state, it has no interest in protecting such activity outside the state. Cf. Finiello v. University of Pennsylvania Hosp., 558 F. Supp. 1365 (D.N.J. 1983) (New Jersey Charitable Immunity Act did not apply to limit recovery brought by a New Jersey residents against Pennsylvania hospital, even though hospital provided substantial services to New Jersey residents, since any connection between hospital and New Jersey which did not include incorporation or operation within New Jersey was insufficient to bring the hospital under the purview of the statute.). In addition, the New York legislature may have recognized a state interest in allowing actions for contribution and indemnity by a landowner against those protected by architects and builders statutes.
This court is aware that the plain language of the statute does not specifically limit its reach to in state activities. However, there is no indication either in the statute or in the legislative history that the Legislature ever intended to grant a blanket immunity to those protected by the statute for conduct occurring without the state. Id. at 1368. Furthermore, as a matter of statutory construction, it must be assumed that laws enacted by the Legislature are intended to apply to entities either incorporated or located within the State. Id.
In summary, I find that New York's contacts and interest in this case are more significant than that of New Jersey's. New Jersey's only interest in this suit lies in ensuring the compensation of its domiciliary  plaintiffs. Clearly, this interest would not be furthered through the operation of New Jersey's substantive law and therefore the operation of N.J.S.A. 2A:14-1.1. I further find that New Jersey has no interest in shielding nonresident corporations from liability for work performed outside of New Jersey. *615 Additionally, New York has a far more compelling interest in regulating dangers inherent in construction activity conducted on its soil. The forgoing internal state needs would not be advanced by application of the statute to New York realty. Clearly New York State has the paramount interest in this litigation and therefor its substantive law should govern this case.
Defendant argues that plaintiffs should be estopped from arguing that New York law applies to this case. Defendant contends that plaintiff has gained an advantage by advocating the application of New Jersey law and should not be allowed to gain a further advantage by now asserting that New York law applies.
This argument is clearly without merit. This case has involved negligence claims from its inception. The defense of these claims would not differ substantially irrespective of which state's substantive law is applied. Any prejudice that may be suffered by defendants can be remedied by lesser sanctions than the dismissal of plaintiff's claims as this case has not yet to be tried. This is not a case where an attorney has taken a position wholly inconsistent with a position taken in a prior case. The issue of whether a conflict exists with regard to the statute of repose is before the court for the very first time. Because of the failure of any party to apprise this court as to the nonexistence of a statute of repose in New York State, I find that this court's prior rulings on the application of N.J.S.A. 2A:14-1.1 defendants York, Worthington, Carrier and Kewanee, were clearly erroneous and therefore a correction with regard to the law of this case is necessary.
Defendant finally argues that the New York Borrowing Statute, N.Y.C.P.L.R. § 202, requires the application of the New Jersey Statute of repose to this case. N.Y.C.P.L.R. § 202 reads:
An action based upon a cause of action occurring without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.
The borrowing statute directs a New York court, when dealing with the foreign claims, to apply the foreign statute of limitations *616 if it bars the action. See, e.g., Knieriemen v. Bache Halsey Stuart Shields, Inc., 74 A.D.2d 290, 427 N.Y.S.2d 10 (1980). Alternatively, if the New York statute has run, and the foreign statute of limitations is still running, a New York court will apply its own statute to bar the claim. Id.
Defendant's contention that N.Y.C.P.L.R. § 202 should apply to bar plaintiff's claims is specious. The borrowing statute is a New York rule of procedure, and it is only the substantive not the procedural law of that state that applies to this case. Furthermore, given the purpose of the borrowing statute to protect nonresident forum shopping in New York, it would be improper to apply the statute to a case not brought in a New York court.
Accordingly, I find that the New Jersey Statute of Repose is not available to defendants to restrict claims against them in New Jersey for injuries alleged to have been sustained in New York and as the claim is not barred in the State where the injuries occurred  New York  it accordingly is not barred in New Jersey, with New York substantive law governing.
NOTES
[1] The plaintiffs do not contest the movant's assertion that the heating, ventilation and air conditioning systems in question are "improvements to real property" for purposes of being brought within the ambit of N.J.S.A. 2A:14-1.1.