

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-7-2001

# Woessner v. Air Liquide, Inc.

Precedential or Non-Precedential:

Docket 99-5237

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Woessner v. Air Liquide, Inc." (2001). *2001 Decisions.* Paper 43.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/43

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 7, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5237

AMELIA WOESSNER,

      Appellant

v.

AIR LIQUIDE. INC., a Delaware Corporation;
CARDOX INC, a California Corporation;
GEN ELEC CO; D ELEC MOTORS INC;
INTL SWITCHBOARD; OLSEN ENG CORP

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 96-cv-552)
District Judge: Honorable Joseph E. Irenas

Submitted Under Third Circuit LAR 34.1(a)
December 11, 2000

Before: SCIRICA, AMBRO, Circuit Judges and
POLLAK, District Judge.**

(Opinion filed: March 7, 2001)

        Kevin P. McCann
        Walter H. Iacovone
        Chance & McCann
        201 West Commerce Street
        P.O. Box 278
        Bridgeton, New Jersey 08302
         Counsel for Appellant

_____

**Honorable Louis H. Pollak, Senior United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

Richard T. Smith
Margolis Edelstein
216 Haddon Avenue
Suite 200
Westmont, New Jersey 08108
 Counsel for Appellee International
Switchboard Corp.

Richard P. Maggi
McDermott & McGee
75 Main Street
P.O. Box 192
Millburn, New Jersey 07041
 Counsel for Appellee
Olsen Engineering Corp.

OPINION OF THE COURT

AMBRO, Circuit Judge

Amelia Woessner ("Woessner") appeals from the grant of summary judgment in favor of the two remaining defendants in this diversity action -- Inter national Switchboard Corporation ("International Switchboard") and Olsen Engineering Corporation ("Olsen"). She contends that the District Court erred in its analysis of New Jersey's choice of law doctrine by applying Delaware's builder's statute, 10 Del. Code S 8127, to bar her pr oducts liability claims. Furthermore, Woessner ar gues that neither the builder's statute of Delaware nor New Jersey should preclude her action because her injuries wer e the result of alleged defects in production machinery and therefore were not covered by the scope of either builder's statute. We affirm the grant of summary judgment of the District Court because it properly applied Delaware law in this case and correctly found that Delaware's builder's statute precluded Woessner's cause of action.

I. Factual and Procedural History

In 1972, Cardox, Inc. ("Cardox") planned the construction of a carbon dioxide recovery plant adjacent to its existing facilities in Delaware City, Delaware. Car dox contracted

with Olsen to provide design and engineering services for that construction. One component of the construction was a 2,300 volt motor control center, also known as a switchgear. That motor control center was manufactured by International Switchboard to the specifications demanded by Olsen and was integrated into the production process of the facility in 1973. Cardox was later acquir ed by Air Liquide, Inc. ("Air Liquide"), a Delawar e corporation, which continued to operate the facility.

Woessner was employed as a field technician by "D" Electric Motors (" `D' Electric") on July 29, 1994, the day of her injury. "D" Electric is located in V ineland, New Jersey and Woessner is a New Jersey resident. In her capacity as a field technician, Woessner visited Air Liquide at its request on that day to provide an evaluation of a motor that was not functioning. Unable to make repairs to the motor on site, Woessner sought to remove it for repair at the "D" Electric facility in New Jersey. Before r emoving the motor, Air Liquide officials asked Woessner to evaluate the attached motor control center. While examining the motor control center with an electrical tester , Woessner was severely burned by an explosion.

This products liability action was brought by Woessner in 1996, alleging that the motor control center was defective in that it contained exposed electrical components. Jurisdiction was based on the diversity of the parties. 28 U.S.C. S 1332. The District Court made two determinations relevant to this appeal. On January 7, 1999, the Court granted the motion of International Switchboar d to establish that the law of Delaware will gover n the determination of liability. On March 17, 1999, the Court then granted summary judgment in favor of Olsen and International Switchboard, predicting that Delaware's builder's statute would bar Woessner's claims against them. All of the defendants not involved in this appeal, including "D" Electric, General Electric Co. and Car dox, have either settled or been dismissed from this action, and thus the entry of summary judgment was a final order which is ripe for appeal to this Court. 28 U.S.C. S 1291.

II. Standard of Review

The District Court's grant of summary judgment is subject to plenary review in this Court. Hurley v. Atlantic

City Police Dept., 174 F.3d 95, 128 n.29 (3d Cir. 1999), cert. denied, 528 U.S. 1074 (2000). Similarly, W oessner is entitled to plenary review of the District Court's prediction, interpretation and application of the gover ning state substantive law. Nationwide Mut. Ins. Co. v. Buf fetta, 230 F.3d 634, 637 (3d Cir. 2000). W e are required to apply the same test that should have been used initially by the District Court -- whether the movant can demonstrate that there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Omnipoint Communications Enters., L.P . v. Newtown Township, 219 F.3d 240, 242 (3d Cir .), cert. denied, 121 S. Ct. 441 (2000). In doing so, we view the evidence and draw all inferences in the light most favorable to the non-movant. Whiteland Woods, L.P. v. Township of West Whiteland, 193 F.3d 177, 180 (3d Cir. 1999).

III. Analysis

As an initial matter, we note that the District Court was required to apply the law of the forum state, including its choice of law provisions. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Robertson v. Central Jersey Bank & Trust Co., 47 F.3d 1268, 1273 (3d Cir. 1995). New Jersey has rejected the strict lex loci delicti ("place of the wrong") rule for determining the choice of law based on the place where the tort occurred. V eazey v. Doremus, 510 A.2d 1187, 1189 (N.J. 1986). In its place, the New Jersey courts have substituted "the more flexible gover nmental-interest analysis in choice-of-law decisions." Id.[citations omitted]. It is the District Court's application of this gover nmental-interest analysis to which Woessner objects on appeal.

Before discussing the governmental-inter est analysis, we observe that the scope of our review of the choice of law question will not be as broad as the District Court's determination. The District Court found that Delaware law applied with respect to all issues of liability. We need not delve that far, for we note that the application of New Jersey's choice of law test proceeds on "an issue-by-issue basis." Veazey, 510 A.2d at 1189."Conflicts principles do not dictate that all legal issues presented by a single case should be decided under the laws of a single state. The evaluation of significant relationships and governmental

4

interests takes place issue by issue and can lead to the application of different bodies of law." Johnson Matthey Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co., 593 A.2d 367, 374 (N.J. Super. Ct. App. Div. 1991). We are convinced, at least as to the question of which builder's statute applies in this case, that the District Court properly applied the law of Delaware.

New Jersey's governmental-interest test r equires a two-step inquiry. "The first step in the analysis is to determine whether a conflict exists between the law of the interested states. . . . If an actual conflict exists, the next step is to identify the governmental policies underlying the law of each state and how those policies are af fected by each state's contacts to the litigation and to the parties." Veazey, 510 A.2d at 1189. Thus, we begin with whether a conflict exists between the builder's statutes of New Jersey and Delaware.

"The Delaware `Builder's Statute' pr ovides a six year limitations1 period on actions for damages, indemnification,

---

1. The builder's statutes of both New Jersey and Delaware are technically statutes of repose and not statutes of limitation. Though both work to extinguish claims after the running of a given period, a statute of repose differs in two respects from a statute of limitation. First, the time period
of a statute of repose does not run from the accrual of a cause of action, as does a statute of limitations. "With the above backdrop it is safe to assert that our statute is not at all a typical statute of limitations, for the
time within which suit may be brought commences with the completion of services and construction and is thus `entir ely unrelated to the accrual of any cause of action.' " O'Connor v. Altus, 335 A.2d 545, 553 (N.J. 1975) (citation omitted); see City of Dover v. International Telephone
& Telegraph Corp., 514 A.2d 1086, 1089 (Del. 1986) ("The statute in question is truly a statute of repose. It pr events a claim from arising, whereas a statute of limitations bars an accrued cause of action."). Secondly, statutes of repose serve a dif ferent purpose than traditional statutes of limitation. "Statutes of limitations are designed to stimulate litigants to prosecute their suits diligently and to avoid burdening our courts with stale claims....[T]he statute of r epose does not serve to limit
stale claims as such. Rather, the statute literally confers immunity ten years after the performance of services or construction when an injury occurs due to a defect or unsafe condition, r egardless of any intended useful life of a product." Van Slyke v. Worthington, 628 A.2d 386, 388 (N.J. Super. Ct. Law Div. 1992) (citations omitted).

5

or contribution for damages resulting fr om personal injuries arising out of any deficiency in the construction or improvement to any real property or the design, planning, supervision, or observation of any such construction." City of Dover v. International Telephone & T elegraph Corp., 514 A.2d 1086, 1088-89 (Del. 1986); see 10 Del. Code S 8127. The six year period runs from the earliest of any of a variety of dates signaling the completion of construction. 10 Del. Code S 8127(b). There is a governmental interest in such laws. The Delaware Supreme Court has noted that builder's statutes have been enacted in as many as 47 states and that "[t]hey are prophylactic measures taken by the Legislatures to lessen the construction pr ofessionals' exposure to the almost unlimited liability which has resulted from the demise of the privity doctrine and the imposition of a discovery rule in tort cases." Becker v. Hamada, Inc., 455 A.2d 353, 355 (Del. 1982).

The New Jersey builder's statute, N.J. Stat. Ann. 2A:14-1.1, does not differ from that of Delawar e in any respect material to this litigation. "N.J.S.A. 2A:14-1.1 was adopted, effective May 18, 1967, as a legislative r esponse to the then expanding liability concepts in this jurisdiction concerning the legal responsibility of contractors, ar chitects, engineers, and others involved in creating improvements to real estate." Brown v. Jersey Cent. Power & Light Co., 394 A.2d 397, 404 (N.J. Super. Ct. App. Div. 1978). The primary distinction between the two is that Delaware's statute provides that no actions may be brought against the builder after six years, while New Jersey has chosen to do similarly after ten years. Compare 10 Del. Code S 8127(b) with N.J. Stat. Ann. 2A:14-1.1. Of course, because the current action was brought almost twenty-three years after the construction of the Cardox facility, the action would be time-barred by either statute, assuming either applied in this case. Indeed, Woessner has made no ef fort to distinguish between New Jersey's and Delawar e's builder's statutes and has "submitted that the outcome is the same regardless of which statute of repose is applied." Br. of Woessner at 15.

Even assuming, arguendo, that the builder's statutes of New Jersey and Delaware differed other than as noted, an

evaluation of the relative governmental interests can lead only to the conclusion that the District Court pr operly applied Delaware law. Woessner notes the following considerations favoring the employ of New Jersey law: Woessner was a New Jersey resident, was employed by a New Jersey company, sought medical assistance in New Jersey and was the beneficiary of public aid in New Jersey.[2] "New Jersey has a clearly recognized gover nmental interest in the compensation of its domiciliaries." Pine v. Eli Lilly & Co., 492 A.2d 1079, 1082 (N.J. Super. Ct. App. Div. 1985). Indeed, this consideration is closely related to New Jersey's interest in assuring that its residents ar e productive and do not become the beneficiaries of public assistance. Schum v. Bailey, 578 F.2d 493, 501 (3d Cir .1978) (Gibbons, J., concurring).

These domicile–related considerations ar e not, however, so important under the governmental-inter est analysis to be dispositive of our inquiry. Moreover , the compensation of Woessner is only tangentially related to the relevant governmental interests that underlie the builder's statutes. This point was made in Fantis Foods, Inc. v. North River Ins. Co., 753 A.2d 176, 180 (N.J. Super. Ct. App. Div. 2000). Though Fantis Foods involved the application of the governmental–interest test to an action for property insurance coverage between two companies whose principal offices were in New Jersey, the Court concluded that New York law should apply because the insur ed building was located in New York. Id. at 177.

> Notwithstanding New Jersey's undeniable inter est in protecting the rights of its insureds and in promoting responsiveness on the part of its insur ers, those "wholly domestic" concerns [citation omitted] ––the only such factors in the case pertaining to New Jersey––

---

2. Woessner's argument assumes that this Court must make a choice of law determination with respect to all issues of liability, and as such its focus is on considerations relevant to the question of which state's products liability law applies. We find this argument unhelpful to the resolution of the choice of law determination, as New Jersey courts have unambiguously held that they must proceed on an"issue-by-issue" basis. See Veazey, 510 A.2d at 1189; Johnson Matthey, 593 A.2d 367 at 374.

7

have considerably less weight than the inter ests of New York in the condition, maintenance and r epair of structures within its borders; the r espective responsibilities, financial and otherwise, of property owners and insurers with respect ther eto; and relevant considerations of hazard, sequence and causation when collapse occurs or is threatened.

Fantis Foods, 753 A.2d at 180. We believe the choice of law analysis for this tort claim to be no differ ent.

At root here is each state government's interest in the premises liability concerns of its contractors and related builders. It is the location of the building, not the individuals who might have been tortiously har med,3 that is relevant to the choice of which builder's statute to apply. Indeed, at least one New Jersey court has recognized that the state governmental interest inher ent in each builder's statute cannot be divorced from the situs of that construction. In Van Slyke v. Worthington, 628 A.2d 386 (N.J. Super. Ct. Law Div. 1992), the Superior Court, Law Division, held that New Jersey's builder's statute did not apply because all of the alleged injuries occurr ed in New York buildings, and thus New York law should apply. The court stated:

> I find that New York's contacts and inter est in this case are more significant than that of New Jersey's. New Jersey's only interest in this suit lies in ensuring the compensation of its domiciliary--plaintiffs. Clearly, this interest would not be furthered thr ough the operation of New Jersey's substantive law and therefor e the operation of N.J.S.A. 2A:14-1.1. . . . Additionally, New York has a far more compelling inter est in regulating dangers inherent in construction activity conducted on its soil. The forgoing [sic] inter nal state needs would not be advanced by application of the [New Jersey builder's] statute to New York realty. Clearly New York

_____

3. It is for this reason that we find W oessner's argument that she was only fortuitously located in Delaware and thus New Jersey law should thus apply to her, see Blakesley v. Wolford, 789 F.2d 236, 243 (3d Cir. 1986), to be unpersuasive.

8

>     State has the paramount interest in this litigation and
>     therefor its substantive law should gover n this case.

Van Slyke, 628 A.2d at 391-92. W e find Van Slyke and
Fantis Foods to be compelling, and thus we pr edict that a
New Jersey court applying New Jersey's choice of law
analysis would find that Delaware's inter est in the conduct
of construction activities in that State outweigh New
Jersey's interest in the compensation of its r esidents.

We turn to the District Court's analysis of Delaware's
builder's statute and determine whether the Court
appropriately awarded Olsen and Inter national Switchboard
the benefits of that statute. The statute bars, after six years
from the earliest of certain defined dates marking the
termination of construction, any claim arising"[f]rom any
alleged deficiency in the construction or manner of
construction of an improvement to real pr operty and/or in
the designing, planning, supervision and/or observation of
any such construction or manner of construction." 10 Del.
Code S 8127(b)(1). Woessner argues that this statute should
not bar her action against International Switchboard and
Olsen because the motor control center was not an
"improvement to real property" covered by the statute.4
Whether the motor control center is an "impr ovement"
under the statute is a question of law and thus
appropriately resolved on a motion for summary judgment.
Hiab Cranes & Loaders, Inc. v. Service Unlimited, Inc., C.A.
No. 82C-FE-98, at 3 (Del. Super. Ct. Aug. 16, 1983).

"Improvement" is defined in the statute to "include
buildings, highways, roads, streets, bridges, entrances and
walkways of any type constructed thereon, and other
structures affixed to and on land, as well as the land itself."
10 Del. Code S 8127(a)(2). This list, however , is intended to
be exemplary and not exhaustive. "As a matter of statutory
construction, the words `shall include' ar e properly
interpreted to indicate that the term`structure'
encompasses items not expressly enumerated in the
_____

4. Woessner appears not to challenge on appeal the District Court's
conclusion that both Olsen and International Switchboard performed or
furnished construction services and wer e not merely suppliers of
construction equipment.

9

statute." City of Dover, 514 A.2d at 1089 (finding that a utility pole can be a "structure" within the meaning of the statute because "it is unquestionably affixed to land").

Delaware courts have employed various means to determine whether a particular construction is an "improvement" to land. The first case addressing the issue, Hiab Cranes & Loaders, Inc. v. Service Unlimited, Inc., C.A. No. 82C-FE-98 (Del. Super. Ct. Aug. 16, 1983), looked to the definition of improvement in other states and found that two approaches were widely employed-- a common law fixture analysis and a "common sense" interpretation defining the term according to common usage. Hiab at 3-4. On the first approach, the Hiab court cited Pennsylvania law for the proposition that "while a fixture is, by definition, an improvement to real property, the converse is not true; an improvement to real property[,] in the ordinary sense of the term, need not be a fixture." Hiab at 4 (citing Keeler v. Commonwealth Dep't of Transp., 424 A.2d 614, 616 ( Pa. Commw. Ct. 1981)). Of the second approach, the Hiab court cited with approval Brown v. Central Jersey Power & Light Co., 394 A.2d 397, 405-06 (N.J. Super . Ct. App. Div. 1978), which contrasted permanent parts of the mechanical systems necessary to the normal function of a building from those "chattels brought into a structure after it is architecturally and mechanically suitable for occupancy for the purpose intended, . . . e.g., furnitur e, production machinery, appliances, etc."-- the former being improvements, the latter not. Id. at 405-06. The Hiab court went on to find that a building's furnace was an improvement covered by the statute. Hiab at 5.

Woessner argues that the motor contr ol center is not an improvement to real property because it is "production machinery" as noted in Brown, and her claims therefore are not barred by Delaware's builder's statute. This argument is unpersuasive for several reasons. First, the only reference in Delaware case law to the fact that "production machinery" is not covered is the citation of Brown contained in the Hiab decision of the Delaware Superior Court.5 Yet because the furnace in Hiab was not

_____

5. The genesis of the "production machinery" comment in Brown further demonstrates why the motor control center should be covered by

10

"production machinery," this refer ence is, at best, dicta. More importantly, a subsequent Delaware case found production machinery to be an improvement to real property. Davis v. Catalytic, Inc., Nos. 82C-AU-39, 82C-OC-84, 1985 WL 189329 (Del. Super. Ct. 1985). In Davis, the Superior Court analyzed the Hiab decision's use of a "common sense" approach and found that, under that approach, a "slurry cooler" was an impr ovement to real property and its builder was entitled to pr otection under 10 Del. Code S 8127. Davis, 1985 WL 189329, at * 5. The "slurry cooler" was a sizable free-standing structure bolted to the concrete floor and affixed to the adjacent pieces of the production process. Id. It is similar to the motor control center here, which was also bolted to the concr ete floor and affixed to the other elements of the production process. See Standard Chlorine of Delaware, Inc. v. Dover Steel Co., 1988 WL 32044, *2 (Del. Super. Ct. March 31, 1988) (holding that a liquid storage tank "attached to the r ealty through a system of pipes, valves, manifolds, wires, scaf folds, catwalks and a foundation" was an improvement to property). Furthermore, both the motor control center and "slurry cooler" were an integral part of the respective purposes of the buildings. See Windley v. Potts Welding & Boiler Repair Co., 888 F. Supp. 610, 613 (D. Del. 1995) (finding a preheater that was "central to the plant's function" to be an improvement). Thus, we pr edict that a Delaware court would find the motor contr ol center to be an improvement under the "common sense" approach employed in Hiab and Davis.

_____

Delaware's builder's statute. The Brown decision relied heavily uponIlich v. John E. Smith Sons Co., 367 A.2d 1216 (N.J. Super. Ct. Law Div. 1976), which held that a defendant who wired a meat grinding machine during the conversion of a building from a theater to a butcher shop could not claim the benefit of the builder's statute in New Jersey. Brown, 394 A.2d at 405. There was no evidence that the meat grinding machine was in any way affixed to the building and the court expressly stated that it was not a fixture. Ilich, 367 A.2d at 1217-18. The court in Brown, however, described Ilich as involving a "meat grinding production machine," and seems to have extrapolated ther efrom the general comment that production machines were not covered by the builder's statute. Brown, 394 A.2d at 405. Obviously, production machines that are fixtures, as the motor contr ol center was, can be covered by the builder's statute. Davis, 1985 WL 189329, at *5.

11

We caution, however, that the "common sense" approach advocated by Woessner was not adopted by the Delaware Supreme Court in its only statement on the matter. In City of Dover, that Court seemed to employ a fixtures analysis by relying on the "other structures affixed to and on land" clause in the definition of "improvement." City of Dover, 514 A.2d at 1089-90 (citing 10 Del. Code S 8127(a)(2)). The Court stated that a "utility pole can be considered a `structure' within the meaning of the statute. Since it is unquestionably affixed to land, it can be considered an `improvement' covered by that statute." Id. at 1090. Employing a strict fixtures analysis lends even stronger support to the conclusion that the motor control center was an improvement, as it had been installed in 1973, was affixed to the concrete floor by bolts for the entire lifetime of the structure leading up to the accident and was an integral part of the production process. Seen in this light, the motor control center is indistinguishable from a circuit breaker box,6 which was also held to be a "permanent fixture" in Kirkwood Dodge, Inc. v. Frederic G. Krapf, Jr., Inc., C.A. No. 84C-DE-81, slip. op. at 3-4 (Del. Super. Ct. May 9, 1989).7

We are convinced that the motor control center was intended to be a permanent fixture for the lifetime of the Air Liquide facility and that it was covered by the Delaware builder's statute. Alternatively, were we to employ the "common sense" approach to improvements, we are convinced that the motor control center was an improvement, indeed an indispensible one, to the Air Liquide facility.

For the reasons noted, we conclude that the District Court properly granted summary judgment in favor of both Olsen and International Switchboard.

_____

6. Indeed, one of Woessner's expert witnesses likened the motor control center to a "circuit breaker box in the home."

7. The Court in Kirkwood Dodge went on to hold, however, that a supplier of a standard circuit breaker box did not "furnish construction" under the builder's statute. Kirkwood Dodge, Inc., at 4-5.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

13