Leonard BECKER, Sidney Becker, Kurt Rostan, and William Gassal, t/a Castle Mall Associates, a partnership, Plaintiffs Below, Appellants,

v.

HAMADA, INC., the Celotex Corporation, and Barrett Roofing Materials Company, Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted: Nov. 17, 1982.

Decided: Dec. 21, 1982.

J. Dallas Winslow, Jr. (argued), Wilmington, for plaintiffs-appellants.

Colin M. Shalk (argued) of Tybout, Redfearn, Casarino & Pell, Wilmington, for defendant-appellee Hamada, Inc.

Robert Burton Coonin (argued) of Berkowitz, Greenstein, Schagrin & Coonin, P.A., Wilmington, for defendant-appellee, The Celotex Corp.

Before QUILLEN, HORSEY and MOORE, JJ.

QUILLEN, Justice:

This is an appeal by a partnership, trading as Castle Mall Associates, from a decision of the Superior Court which granted summary judgment to Hamada, Inc., The

Celotex Corporation and Barrett Roofing Materials Company, appellees.[1] Castle Mall Associates contracted in July, 1970 with a general contractor for construction of a shopping mall. A subcontract was formed between the general contractor and appellee, Hamada, Inc., for the construction of a roof using materials supplied by Celotex Corporation. The roof was completed and was paid for by November, 1971. Castle Mall Associates alleges that the roof soon began to leak and that it was required to make repeated repairs. In 1979 Castle Mall Associates hired an expert to determine the cause of the leaks. He reported that they were caused by defects in workmanship and materials.

Appellants filed a complaint on July 24, 1980, alleging that Celotex had breached an implied warranty of merchantability for the roofing materials (Count II) and that it negligently failed to provide adequate installation instructions and to test the materials (Count IV). Additionally, the complaint charged that Hamada, Inc. had breached its installation contract by failing to install the roof in a workmanlike manner (Count I), and breached both the express warranty of fitness for a particular purpose (Count III) and the implied warranty of merchantability (Count V). Appellees cross-claimed and denied the allegations of the complaint. They moved for summary judgment, contending that all of the claims were barred by the applicable statutes of limitations.

The Superior Court found that the complaint was barred by the six year limitation on actions found in 10 *Del.C.* § 8127, the "builder's statute", and that that statute had not been tolled by the defendant foreign corporations' alleged absence from the state. The Court granted appellees' motion by letter opinion, *Becker v. Hamada, Inc.,* Del.Super., C.A. No. 80C–JN–103 (February 12, 1982).

■ 10 *Del.C.* § 8127[2] provides a six year limitation on actions for damages resulting from deficiencies in the construction of an improvement to real property. It prevents a cause of action from arising after that period. It affords protection to those parties performing or furnishing any construction of an improvement to real

1. Barrett Roofing Materials Company is a former subsidiary of Celotex which no longer has a separate existence.

2. § 8127. *Alleged deficiencies in the construction of improvements to real property.* (in pertinent part)

   (b) No action, whether in or based upon a contract (oral or written, sealed or unsealed), in tort, or otherwise, to recover damages or for indemnification or contribution for damages, resulting:
     (1) From any alleged deficiency in the construction or manner of construction of an improvement to real property and/or in the designing, planning, supervision and/or observation of any such construction or manner of construction; or
     (2) From any alleged injury to property, real, personal or mixed, arising out of any such alleged deficiency; . . .

shall be brought against any person performing or furnishing, or causing the performance, or furnishing of, any such construction of such an improvement or against any person performing or furnishing, or causing the performing or furnishing of, any such designing, planning, supervision, and/or observation of any such construction or manner of construction of such an improvement, after the expiration of 6 years from whichever of the following dates shall be earliest:

   d. The date when payment in full has been received by the person against whom the action is brought for the particular phase of such construction or for the particular phase of such designing, planning, supervision, and/or observation of such construction or manner of such construction, as the case may be, in which such alleged deficiency occurred;

   f. The date when the construction of such an improvement as called for by the contract has been substantially completed;

   (c) Nothing in this section shall extend or lengthen, nor shall anything in this section be construed or interpreted as extending or lengthening, the period otherwise prescribed by the laws of this State for the bringing of any action covered by this section.

property, as well as those causing to perform or furnish, any design, plan, supervision of or observation of any construction of an improvement. 10 *Del.C.* § 8127(b).[3] Among other specified events, the period begins to run when final payment is received or when the improvement is substantially completed. 10 *Del.C.* § 8127(b)(6)d, f. In this case payment had been made and the project completed by November 1, 1971. The Superior Court found that a cause of action against the appellees could not arise after November 1, 1977 and that the complaint was not timely filed. At oral argument in this appeal Castle Mall Associates conceded that 10 *Del.C.* § 8127 precludes the claims against Hamada, Inc., since it performed the construction of the improvement. However, it argued that Celotex, a materialman, was not similarly protected.

There is no legislative history regarding our statute but an examination of the statutory language persuades us that Celotex is not included in the protections of 10 *Del.C.* § 8127. That statute is intended to limit the duration of liability for construction professionals to a six year period. Similar statutes have been enacted in 47 states and the District of Columbia. They are prophylactic measures taken by the Legislatures to lessen the construction professionals' exposure to the almost unlimited liability which has resulted from the demise of the privity doctrine and the imposition of a discovery rule in tort cases.[4] These statutes recognize that construction improvements have a life span of decades and that injury or damage suffered a specific time after control is relinquished to the owner may be the result of improper maintenance or other factors occurring after completion. *See* 29 Fed.Ins.

Coun.Q., Limitation of Action Statutes for Architects and Builders—An Examination of Constitutionality 41, 44 (1978).

The class protected by the statutes varies with the language of the statute. Some statutes exclude builders;[5] others may protect builders and not suppliers.[6] It has been argued that protection should extend to suppliers or materialmen based upon a determination as to whether the product was necessary in order for the improvement to function as intended. Thus, a supplier would be protected to the extent that he designed, supervised, planned or constructed the product as part of the improvement but unprotected for activities which took place at a plant away from the construction site. *See* 11 Cumb.L.Rev., The Constitutionality of Alabama's Statute of Limitations for Construction Litigation: The Legislature Tries Again, 1, 13–14 (1980); *see also Howell v. Burk,* App., 90 N.M. 688, 568 P.2d 214, 223, *cert.* den. 91 N.M. 3, 569 P.2d 413 (1977).

The language of our statute negates such arguments: "No action ... shall be brought against any person ... furnishing ... any such construction ... after the expiration of 6 years from ... [d] [t]he date when payment in full has been received ... [or] [f] [t]he date when the construction of an improvement ... has been substantially completed;" § 8127(b). A person who furnishes is one who provides for, equips, supplies or appoints. Webster's New International Dictionary, 1021 (2d ed., G. & C. Merriam Co. 1951). *Accord* The American Heritage Dictionary 534 (Houghton Mifflin Co. 1969).

---

**3.** "Improvement" excludes residential construction. 10 *Del.C.* § 8127(a)(2).

**4.** A discovery rule accrual of the statute of limitations was applied to "inherently unknowable" injuries in *Isaacson, Stolper & Co. v. Artisan's Savings Bank,* Del.Supr., 330 A.2d 130, 133 (1974). *See* Limitation of Action Statutes for Architects and Builders—An Examination of Constitutionality, 29 Fed.Ins.Coun.Q. 41 (1978); *See Also* Limitation of Actions, 16 Land & Water L.Rev. 313 (1981); Recent Statu-

tory Developments Concerning the Limitation of Actions Against Architects, Engineers and Builders, 60 Kent.L.J. 462 (1972); Comment/Limitation of Action Statute for Architects and Builders—Blueprint for Non-action, 18 Cath.U.L.Rev. 361 (1969).

**5.** Ind.Code Anno. § 34–4–20 (Burns 1973).

**6.** *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715, 719 (1978).

Celotex supplied Hamada, Inc. with construction materials but did not engage in or furnish "construction", which is defined as the act of building; erection; act of devising and forming; fabrication; composition. Webster's, *supra* at 572. In fact, Celotex argued precisely this point in oral argument on the warranty claims. Therefore, we conclude that the Superior Court incorrectly determined that Celotex Corporation came within the statutory protection when it supplied roofing material to appellee, Hamada, Inc.

■ However, even if Celotex Corporation cannot avail itself of the protection of 10 *Del.C.* § 8127, it is protected by 6 *Del.C.* § 2–725, the four year statute on warranty claims and 10 *Del.C.* § 8106, the three year statute on tort claims. The warranties were breached, if at all, at the time of payment in 1972 or at discovery of defects shortly thereafter, 6 *Del.C.* § 2–725(2), and the negligence allegation was actionable from the date of occurrence, *Mastellone v. Argo Oil Corp.*, 46 Del. 102, 82 A.2d 379, 383 (1951). Appellants argue that we should apply a time of discovery rule to the negligence in this case, contending that the roof defects were not discoverable before 1979. However, even if the defects were found to be within the "inherently unknowable" exception and subject to the discovery rule, *see Isaacson, Stolper Co. v. Artisan's Savings Bank*, Del.Supr., 330 A.2d 130, 133 (1974), it was obvious to appellant by 1974 that the roof had recurrent problems. Over the next two years the appellant rehired Hamada, Inc., as well as employing two other roofers, to correct the leaks. It spent over $11,000.00 in this period to repair a four year old, $150,000.00 roof. Assuming for summary judgment purposes that Castle Mall Associates' uncontradicted assertions are true, *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, Del.Super., 312 A.2d 322, 325 (1973), the only conclusion that can be drawn from these facts is that the existence of a roof defect was reasonably discoverable before 1976, even though Castle Mall Associates did not attempt to pinpoint the exact cause of the leaks until 1979.

"Even in malpractice and fraud cases where a discovery rule is applied it is not the actual discovery of the reason for the injury which is the criteria.... [D]iscovery means discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery."

*Omaha Paper Stock Co. v. Martin K. Eby Constr. Co.*, 193 Neb. 848, 230 N.W.2d 87, 89–90 (1975). Thus, under a time of discovery rationale, appellants still would have failed to timely file.

■ Appellants also argue that these statutes were tolled because the appellees, both foreign corporations, were absent from the State after completion of the project. However, as Superior Court found, it is clear that both corporations were subject to substituted service, *see* 8 *Del.C.* § 376 and 8 *Del.C.* § 382(a), and that such process is permitted under 10 *Del.C.* § 3104. Further, we note that Hamada was served in this action at the same address that it used in the 1971 contract with appellant and also that it was available to perform roof repairs for appellants in 1975 and 1976. Thus, this argument is without merit since appellants, with due diligence, could have served appellees. *Russell v. Olmedo*, Del.Supr., 275 A.2d 249, 250 (1971); *Bokat v. Getty Oil Co.*, Del.Supr., 262 A.2d 246, 250 (1971); *see Perry v. American Motors Corp.*, Del.Super., 353 A.2d 589, 592–94 (1976).

Finally, Castle Mall Associates raises matters not fairly presented to the Court below which may not be heard for the first time on appeal. Delaware Supreme Court Rule 8. *Peterson v. Hall*, Del.Supr., 421 A.2d 1350, 1354 (1980); *Wilmington Trust Company v. Conner*, Del.Supr., 415 A.2d 773, 781 (1980); *Robinson v. Meding*, Del. Supr., 163 A.2d 272, 277–78 (1960).

Therefore, the judgment of the Superior Court is affirmed.