**S&R ASSOCIATES, L.P., III, a Limited Partnership of the State of Delaware, Plaintiff,**

v.

**SHELL OIL COMPANY, et al., Defendants.**

**No. 94C–06–189–WTQ.**

Superior Court of Delaware, New Castle County.

Argued: Sept. 9, 1998.
Decided: Sept. 30, 1998.

---

Stephani J. Ballard, Doroshow & Pasquale, Wilmington, Delaware, Bruce H. Nagel, Nagal Rice & Dreifuss, Livingston, New Jersey, for Plaintiff S & R Associates, L.P., III.

Richard K. Herrmann, Mary B. Matterer, Blank, Rome, Comisky & McCauley, LLP, Wilmington, Delaware, Robert J. Kelly, Kelly A. Watters, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Newark, New Jersey, for Defendant Shell Oil Company.

QUILLEN, J.

This is the Court's opinion on Defendant Shell Oil Company's two Motions for Summary Judgment pursuant to Superior Court

Civil Rule 56.[1] For the reasons given herein, Defendant's Motions for Summary Judgment on the claims of implied warranty of merchantability, implied warranty of fitness for a particular purpose, express warranty, civil conspiracy and deceptive trade practices are GRANTED. Motions for Summary Judgment as to the negligence claims, consumer fraud and the allocation of damages are DENIED.

## I. FACTS

This action involves a dispute between the owner of residential housing units and the manufacturer of raw materials utilized in the production of polybutylene pipes. The central issue is whether the Defendant, as a supplier of the resin used to manufacture polybutylene pipes, is liable for the damages caused by the failure of the unit's plumbing system.

Plaintiff, S&R Associates, L.P., III ("S&R"), is the owner of The Arbor Pointe Apartment Complex, located at 4000 Dawnbrook Drive, in Wilmington, Delaware. The Arbor Pointe complex was constructed in 1985 and consists of 264 rental units. The plumbing system installed at the complex utilized "polybutylene" pipes, a material chosen for its relatively low cost and light weight.

Defendant, Shell Oil Company ("Shell"), manufactures polybutylene, a resin used in the manufacture of polybutylene pipes. Shell did not, however, manufacture the products used in the Arbor Point Apartment Complex. Shell produced and sold polybutylene resin to certain customers, who in turn used the resin to manufacture polybutylene pipes. These pipes were connected with acetal fittings and metal crimp rings to form the "polybutylene plumbing system."

While Shell did not directly sell the polybutylene pipes, it actively participated in the promotion of polybutylene plumbing systems and used its corporate symbol on promotional literature. This promotional material included representations that polybutylene pipe was lighter, more freeze resistant and less expensive than copper pipe. S&R also asserts that the literature represented that polybutylene pipe "would last as long as copper pipe," although no documentation presented explicitly supports this proposition.[2]

Arbor Pointe experienced serious and systematic problems with the plumbing system from its inception. These failures continued for years and included a break in October of 1989 that flooded three units. Apparently, a defect in the polybutylene system caused the pipes and fittings to crack when exposed to chlorinated water. Plaintiff asserts that, despite the severity and frequency of the leaks, S&R did not realize these leaks were attributed to a defect in the polybutylene system until 1993, when one of S&R's agents had conversations with others in the property management business. S&R also asserts that Shell was aware of this inherent defect in the system as far back as 1980 and actively concealed this fact from the public.[3]

In 1994, S&R filed suit alleging that the polybutylene plumbing system, including the polybutylene pipes, was defective and would continue to fail. S&R's complaint has asserted eleven separate counts, the majority sounding in either contract, fraud or negligence. Subsequently, Shell moved for summary judgment with respect to eight claims, including those for breach of the warranty, civil conspiracy, consumer fraud and certain negligence claims.

---

1. Defendant withdrew a third motion, directed to counts 4, 5 and 6, counts based on various degrees of misrepresentation.

2. Plaintiff's Response to Motion for Summary Judgment (Dk. No. 97, at 2). The literature distributed by Shell makes claims that polybutylene pipe is "comparable to" copper pipe, but there is no representation that the piping would last "as long as" copper pipe. *Id.*
 Plaintiffs also rely on the testimony of Mr. Charles Johnson, a former S & R principal. Mr. Johnson stated that Shell's literature represented that polybutylene pipe would "perform either equal to or better than copper pipe installation." (Deposition of Mr. Charles Johnson, *Id.* at T44: 19–20). Once again, this does not explicitly support the contention that Shell represented that polybutylene pipe would last as long as copper pipe.

3. Plaintiff's Response to Motion for Summary Judgment (Dk. No. 97, at 2).

## II. STANDARD OF REVIEW

When considering a motion for summary judgment, the Court's function is to examine the record to determine whether genuine issues of material fact exist. *Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver, Inc.*, Del.Super., 312 A.2d 322, 325 (1973). If after viewing the record in a light most favorable to the non-moving party, the Court finds that there are no genuine issues of material fact, summary judgment will be appropriate. *Id.* Summary judgment will not be granted if the record indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances. *Ebersole v. Lowengrub*, Del.Supr., 180 A.2d 467 (1962).

## III. DISCUSSION

### A. BREACH OF CONTRACT

Counts one through three of S&R's complaint allege breach of both express and implied warranties. Shell counters by asserting that S&R did not file its complaint before the statute of limitations had expired and that there is no reason the statute should be tolled. They also contend that S&R, as a limited partnership, is not the type of entity entitled to breach of warranty protection under 6 *Del. C.* § 2–318.

The Court is persuaded by Shell's arguments and all counts sounding in contract are dismissed because: 1) S&R has failed to file an action before the statute of limitations had expired; 2) Shell, as an entity supplier of raw materials, was not in direct contractual privity with S&R; and 3) S&R, as a limited partnership, lacks standing as a third party beneficiary of a contractual warranty under 6 *Del. C.* § 2–318.

### 1. Statute of Limitations

 S&R's contract claims are barred by the statute of limitations. Causes of action based on a breach of warranty under the Delaware Commercial Code have a four-year statute of limitations period. 6 *Del. C.* § 2–725. The statute indicates that a "breach of warranty occurs when tender of delivery is made, except that where a warranty *explicitly extends* to future performance of the goods and discovery of the breach must await the time of such performance...." *Id.* (emphasis supplied).[4] Unlike the judicial gloss applicable to other statutes in tort law, the clock by express statutory provision ticks in warranty actions when the breach occurs even though the buyer does not know the goods are defective. *Lecates v. Hertrich Pontiac Buick Co.*, Del.Super., 515 A.2d 163, 175 (1986).[5] The "time of discovery rule," recognized in other contexts, has not been extended to warranty actions. *Elmer v. Tenneco Resins, Inc.*, D.Del., 698 F.Supp. 535, 539 (1988). Thus, the date of the purchase is key. *Harvey v. Sears, Roebuck & Co.*, Del.Super., 315 A.2d 599, 601 (1973). Nor do the warranty claims here survive on the grounds of equitable estoppel or fraudulent concealment. Again the *Lecates* case at 515

---

4. The section governing the statute of limitations in contracts for the sale of goods, 6 *Del. C.* § 2–725, states in its entirety:

§ 2–725 Statute of limitations in contracts for sale.

(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitations to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, *regardless of the aggrieved party's lack of knowledge of the breach.* A breach of warranty occurs when tender of delivery is made, except that where a warranty *explicitly extends* to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within 6 months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

(4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this subtitle becomes effective. (Emphasis supplied).

5. *Compare Kaufman v. C.L. McCabe & Sons, Inc.*, Del.Supr., 603 A.2d 831, 835 (1992) (discussing the "time of discovery rule" in tort law).

**436**

A.2d 176–77 appears to foreclose this argument. Fraudulent concealment "requires the twin showing of (a) the defendant's knowledge of the alleged wrong, and (b) an affirmative act of concealment by the defendant." Just as in *Lecates*, "[n]ot having alleged any actual misrepresentation or fraudulent artifice, plaintiffs' contention boils down to a charge that [Shell's] 'knowing silence' qualifies as fraudulent concealment." But "[m]ere silence or failure to disclose does not constitute such fraudulent concealment as will suspend operation of [a statute of limitations]." *Lecates*, 515 A.2d at 176 (quoting former 54 C.J.S. "Limitation of Actions," § 206 at 226–28 (1948); *see now* 54 C.J.S. "Limitations of Actions," § 90(c) at 130–31 (1987)).

▆▆▆ To extend a contract warranty beyond the four-year statute of limitations, there must be evidence of an express warranty extending to, or beginning after, a specific future point in time beyond the four-year window. *Pack & Process, Inc. v. Celotex Corp.*, Del.Super., 503 A.2d 646, 652 (1985). An implied warranty, by its very nature, cannot extend to future performance because it makes no explicit representations concerning longevity. *Lecates*, 515 A.2d at 174 n. 15. Therefore, only an express warranty that speaks to a specific point in the future falls within this "future performance exception."

Warranties that clearly and expressly speak to a future point in time fall within this exception. The more difficult question is whether warranties that speak generally about product longevity, without express language, fall within this exception. Delaware State Courts have taken a somewhat flexible view on this issue, allowing a warranty to fall within the exception provided there is a factual basis to believe a warranty was intended to live beyond the traditional four-year statute of limitations. *Pack & Process*, 503 A.2d at 652.[6]

In *Pack & Process*, the defendant manufactured roofing materials used in the construction of the plaintiff's roof. Upon completion of the roof, the defendant issued a 20-year bond to be used for the repair of ordinary wear and tear. The defendant was also obligated under the bond to inspect the roof any time within the twenty years if it required repairs. The defendant did not make express representations that the roof would last for a particular amount of time. *Id.* at 648.

After the four-year statute of limitations expired, the plaintiff discovered the roof was defective and filed a complaint against the defendant alleging, *inter alia*, breach of warranty. Defendant moved for summary judgment on the issue citing the statute of limitations. The Superior Court determined that, in light of the 20-year bond and the defendant's commitment to inspect the roof for twenty years, a question of fact still existed as to whether the defendant created a "future warranty" extending beyond the four-year statute of limitations. *Id.* at 656.

The Arbor Pointe Apartment Complex was completed sometime in 1987 and the complaint was filed in 1994. Unless Shell's warranty falls within the "future performance exception," the statute of limitations has lapsed.

▆▆▆ Shell did not provide any information stating polybutylene piping would last for a specific number of years. Although Shell did represent, via literature, that polybutylene pipe was freeze safe, corrosion resistant and comparable to copper pipe, these vague representations are not explicit enough to create a future warranty. The mere assertion that polybutylene is comparable to copper piping falls short of a warranty that "explicitly extends to future performance." Unlike the facts in *Pack & Process*, nothing in the record indicates a representation pointing to a specific point in the future.

To survive a substantiated motion for summary judgment, the non-moving party must produce evidence showing there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, Plaintiff has

**6.** But, *see Addison v. Emerson Electric Co.*, D.Del., C.A. No. 96–146–SLR, Robinson, D.J., 1997 WL 129327 (Feb. 24, 1997), Mem. Op. at 3 ("Generally, the "future performance" exception of § 2–725 is construed narrowly").

failed to provide information to create a genuine issue of fact as to whether there was a guarantee of future performance by Shell. Accordingly, Shell's Motion for Summary Judgment on counts one through three must be granted because the four-year statute of limitations has lapsed.

### 2. Breach of Warranty under 6 Del. C. § 2-318

 Even without the statute of limitations issue, S&R, as a limited partnership, lacks standing to bring a warranty claim under 6 *Del. C.* § 2-318.[7] The plain language of the statute states that "a seller's warranty, whether express or implied, extends to any *natural person* who may reasonably be expected to use, consume or be affected by the goods. . . ." 6 *Del. C.* § 2-318 (emphasis supplied). The determination of exactly who is a "natural person" begins with an analysis of the statute and its history.

Prior to the adoption of the Uniform Commercial Code ("Code"), an injured party was required to establish privity with the defendant to recover under a breach of warranty claim. *See, e.g,. Ciociola v. Delaware Coca-Cola Bottling Co.*, 172 A.2d 252 (1961). This was often difficult to accomplish when the ultimate user of a defective product was not the direct purchaser. *Id.* To counter the harsh result of this rule, the legislature enacted Section 2-318, abolishing the privity requirement and granting standing to those likely to be injured by defective products. *Delaware Study Comments to Section 2-318,* at 59 (1974);[8] *Cline v. Prowler Ind. of Ma-*

*ryland, Inc.*, Del.Supr., 418 A.2d 968, 976 (1980).

When the Code was amended by the American Law Institute in 1966, Section 2-318 was changed to offer three distinct alternatives. *Cline,* 418 A.2d at 978. The three alternatives were as follows:

### Alternative A

A seller's warranty whether express or implied extends to any *natural person* who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

### Alternative B

A seller's warranty whether express or implied extends to any *natural person* who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

### Alternative C

A seller's warranty whether express or implied extends to any *person* who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends. As amended 1966.

---

7. Since S&R lacks direct privity with Shell, they must seek standing as a third party beneficiary under 6 *Del. C.* § 2-318. S&R lacks direct privity because Shell only manufactured the resin used in the production of polybutylene pipes, it did not manufacture or sell the final product.

8. The Delaware Study Comment to Section 2-318 states in part:
 The case law in most of the larger commercial states has resulted in large measure in the abolition of the privity requirement and the adoption of a rule which is substantially in accord with the version of § 2-318 adopted by Delaware. The Delaware Uniform Commercial Code Committee is of the opinion that the recommended amend-

ment is reasonable, is in accord with modern commentaries, and will bring the Delaware law in substantial conformity with the law of a number of states (including the larger commercial states) which have adopted the Code. The variation in the language of § 2-318 is required to accomplish this purpose because of the decision of the Delaware Supreme Court in *Ciociola v. Delaware Coca-Cola Bottling Co.,* 53 Delaware 477, 172 A.2d 252 (1961). In that case the Court held that Delaware was committed to the common law rule governing actions for breach of implied warranties, and that any change would have to be made by the Legislature rather than the Judicial Branch.

1A Uniform Laws Annotated § 2–318 (1989) (emphasis supplied). Delaware adopted Alternative B, in a somewhat modified form, by omitting the words "in person" before the words "by breach." *Id.* at 559.

The American Law Institute's Official Comment to Section 2–318 states:

> 3. [Alternative A] expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser.... [Alternative B] is designed for states where the case law has already developed further and for those that desire to expand the class of beneficiaries. [Alternative C] goes further, following the trend of modern decisions as indicated by Restatement of Torts 2d § 402A (Tentative Draft No. 10, 1965) in extending the rule beyond injuries to *the person.*

*Id.* at 558 (emphasis supplied).

It appears that when the legislature decided on a modified Alternative B, as opposed to Alternative C, the legislature expressed an intention to exclude legal entities from protection. Alternative C, the most liberal of the alternatives, applies to all "persons," while Alternatives A and B extend only to "natural persons." Additionally, the Official Comment states that only Alternative C would extend protection beyond injuries to "the person." It would appear that our legislature did extend recovery to "natural persons" beyond injuries to the person and, to that extent, adopted Alternative C. *See Martin v. Ryder Truck Rental Inc.*, Del.Supr., 353 A.2d 581, 583 n. 3 (1976); *Cline,* 418 A.2d at 978–79 (discussing 6 *Del. C.* § 2–318).

The case law also provides additional guidance on the subject.[9] In *Dover Downs, Inc. v. Koppers Co. Inc.*, Del.Super., C.A. No. 80C–0C–2, Wright, J., (Feb. 8, 1984), this Court stated that absent privity, 6 *Del. C.* § 2–318 does not extend warranty protection to corporations. *Id.* at 4. Further evidence of the distinction between "persons" and "natural persons" is found in various Delaware cases and legal reference material.[10]

To hold that Section 2–318 applies to legal entities such as corporations and limited partnerships would nullify the legislature's decision in choosing Alternative B over Alternative C on this very point. While it may be desirable to extend warranty protection beyond natural persons, this change in policy should be made by the Legislature rather than the Court. *Ciociola,* 172 A.2d at 257. Accordingly, S&R, being a limited partnership, lacks standing to bring a claim under 6 *Del. C.* § 2–318 and Shell's Motion for Summary Judgment on counts one through three must be granted.

### 3. Conclusion on Warranty Claims

For the two independent reasons stated above, each being sufficient by itself, Shell's Motion for Summary Judgment on counts one through three is granted.

### B. NEGLIGENCE

Counts seven and eleven allege negligent conduct on the part of Shell. Count seven alleges that Shell was negligent in supplying information to the industry while count eleven alleges negligent manufacturing and testing. Shell contends that these actions should be dismissed as not within the statute of

---

**9.** Plaintiff contends that § 2–318 is no longer intended to be limited to actions by "natural persons" and cites to footnote 9 of *Pack & Process,* 503 A.2d at 659 n. 9. This footnote states "the defendant concedes that § 2–318 is no longer intended to be limited to actions by 'natural persons.' See Delaware Study Comment to 6 *Del. C.* § 2–318." But this statement is a mere concession by the defendant in *Pack & Process;* there is nothing in the Delaware Study Comment to support such a statement.

**10.** In talking about a corporation's need to be represented by counsel, the Supreme Court has stated that "a corporation, though a legally recognized entity, is regarded as an artificial or fictional entity, and not a natural person." *Tran-*

*spolymer Ind., Inc., v. Chapel Main Corp.,* Del. Supr., No. 284, 1990, Horsey, J., 1990 WL 168276 (Sep. 18, 1990)(ORDER); Blacks Law Dictionary defines a human being as a natural person. Blacks Law Dictionary 6th ed. 1142 (1990).

Case law from other jurisdictions has also alluded that corporations are not "natural persons." *See, e.g., Monsanto Co. v. Alden Leeds, Inc.,* N.J.Super., 130 N.J.Super. 245, 326 A.2d 90, 95 (1974); *Fischbach & Moore International Corp. v. Crane Barge R–14,* D.Md., 476 F.Supp. 282, 288 (1979), *aff'd,* 632 F.2d 1123 (1980) (failing to extend warranty protection to corporate defendants).

limitations. S&R asserts that they are entitled to toll the statute of limitations under the time of discovery rule due to the complexity of the underlying problem. S&R says that given the complex nature of the problem and Shell's alleged effort to conceal industry wide failures of polybutylene pipe, S&R is entitled to have the statute of limitations tolled.

 Generally, a three-year statute of limitation under 10 *Del. C.* § 8106 governs claims of negligence. The time of discovery rule provides that in certain cases, a cause of action does not accrue until a party has reason to know that he or she has a cause of action. *Pack & Process,* 503 A.2d at 650–51. Therefore, the limitation period does not begin to run until the plaintiff has reason to know that a wrong has been committed provided the injuries are "inherently unknowable" and sustained by a "blamelessly ignorant" plaintiff. *Kaufman v. C.L. McCabe & Sons, Inc.,* Del.Supr., 603 A.2d 831, 835 (1992). It is not the actual discovery of the reason for the injury that starts the clock, but the discovery of facts sufficient to put a person of ordinary intelligence on inquiry which, if pursued, would lead to discovery. *Becker v. Hamada,* Del.Supr., 455 A.2d 353, 356 (1982) (quoting *Omaha Paper Stock Co. v. Martin K. Eby Constr. Co.,* Neb.Supr., 193 Neb. 848, 230 N.W.2d 87, 89–90 (1975)).

S&R's complaint was filed in 1994, more than three years after Arbor Pointe experienced major plumbing failures. Unless the time of discovery rule is applied, S&R's complaint is untimely. The question to be answered now is whether S&R should have been on notice that multiple plumbing failures were attributable to defects in polybutylene pipe.

In *Queen Anne Pier Condominium Council v. Raley,* Del.Super., C.A. No. 85C–JA–10, Lee, J., 1988 WL 7618 (Jan. 26, 1988), the plaintiff sued a real estate developer for damages caused by a defective roof. The roof began leaking in 1981, but suit was not filed until 1985, after the three-year statute of limitations had expired. The developer claimed that the time of discovery was in 1981, when the roof first began to leak. Conversely, the plaintiff asserted that they did not attribute the leaks to faulty construction until 1982, when they learned of the generally defective condition of the roof. *Id.* at 7. This Court denied a motion for summary judgment on the statute of limitations stating that there was a material question of fact concerning when the cause of action was "discovered." *Id.* at 8. *See also Pack & Process,* 503 A.2d at 650–51 (applying the time of discovery rule when plaintiff failed to attribute a leaking roof to defective roofing materials); *Affordable Home Enterprises, Inc. v. Nelson,* Del.Super., C.A. No. 91C–08–024, Steel, V.C., 1994 WL 315227 (May 25, 1994)(ORDER) (refusing to grant summary judgment on a time of discovery issue when facts were in dispute concerning whether plaintiff should have attributed septic pipe clogs to a defective septic system).

 Arbor Pointe experienced plumbing failures from its inception, culminating in a major break in 1989. Despite these continuing problems, S&R waited more than three years to file a complaint. Applying a reasonable person standard, and viewing the facts in a light most favorable to the Plaintiff, a dispute still exists as to whether S&R, in the exercise of due diligence, should have attributed multiple plumbing failures to defective plumbing materials. Just as the plaintiffs in *Queen Anne* did not attribute a leaking roof to faulty roofing materials, S&R may have failed to see the connection between plumbing leaks and defective polybutylene pipe. One alternative explanation, for example, is that the leaks were a result of faulty installation. This explanation sounds even more reasonable given Shell's alleged concealment of inherent defects in polybutylene piping systems.

Given the complexity of the inherent defects in polybutylene pipe and Shell's potential concealment of the problem, the determination of whether S&R should have been on notice to investigate faulty plumbing systems should be left to the trier of fact. *Affordable Home,* at 6. Accordingly, Shell's Motion for Summary Judgment on counts seven and eleven is denied.

## C. CIVIL CONSPIRACY

■ Count eight of Plaintiff's complaint alleges civil conspiracy. The elements of civil conspiracy include: 1) a confederation or combination of two or more persons; 2) an unlawful act done in furtherance of the conspiracy; and 3) actual damages. *Nicolet Inc. v. Nutt*, Del.Supr., 525 A.2d 146, 149–50 (1987). There is normally no duty to speak absent a fiduciary or contractual relationship. *Id.* at 150.

■ Here, Shell had received prior complaints and was on notice of reported problems with the piping system. The record is rife with evidence that the crimping fittings and piping materials were inadequate. There was, however, no fiduciary or contractual relationship between Shell and S&R requiring Shell to affirmatively disclose this information. Nor is there evidence of any action by Shell with another designed to victimize S&R. Plaintiff has failed to establish that there was an unlawful act done in furtherance of the conspiracy, even though Shell had evidence of product failures dating back to 1980. Shell's Motion for Summary Judgment on count eight is granted.

## D. CONSUMER FRAUD

■ Count nine of S&R's complaint alleges that Shell committed consumer fraud as defined by 6 *Del. C.* § 2513. Shell counters by asserting that S&R never relied on Shell's representations in choosing the polybutylene plumbing system. While a fraud action at common law requires the plaintiff to prove reliance, there is no corresponding reliance requirement in 6 *Del. C.* § 2513. The Plaintiff need only prove that the Defendant intentionally concealed material facts with the intent that others would rely upon such concealment. *Id.*

Since there is evidence in the record suggesting that Shell was aware of material defects in polybutylene plumbing systems as far back as 1980, a motion for summary judgment on this issue would be inappropriate. Accordingly, Defendant's Motion for Summary Judgment on count nine is denied.

## E. DECEPTIVE TRADE PRACTICES

■ Count ten of S&R's complaint alleges deceptive trade practices. S&R does not have standing to bring a claim of deceptive trade practices under 6 *Del. C.* 2511–2526, 2531 *et. seq.* Deceptive trade practices arise only from those unfair trade practices that interfere with the business of another, so only competing businesses have standing to raise the claim. *Grand Ventures, Inc. v. Whaley*, Del.Supr., 632 A.2d 63, 67 (1993). Because S&R is a consumer, not a competing business, it lacks standing to raise this issue and Summary Judgment is granted.

## F. ALLOCATION OF DAMAGES

■ Shell argues that no allocation of damages can fairly be attributed to their product. Shell cites *F.E. Myers Co. v. Pipe Maintenance Services Inc.*, D.Del., 599 F.Supp. 697 (1984) for the proposition that a substantial amount of damages may be a direct result of other factors. S&R argues that Shell would be responsible for the defect and repairs. The Court can adequately deal with damages at trial. Summary Judgment is premature; there is yet a dispute as to the causation of the damages, it is difficult to imagine that the Court cannot find a methodology to resolve the damage attribution question.

## IV. CONCLUSION

Summary Judgment in favor of Shell is appropriate on S&R's claims of implied warranty of merchantability (count one), implied warranty of fitness for a particular purpose (count two), express warranty (count three), civil conspiracy (count eight) and deceptive trade practices (count ten). Summary Judgment is not appropriate as to negligence (counts seven and eleven), consumer fraud (count nine) and the allocation of damages. For all of the foregoing reasons, Shell's Motions for Summary judgment are GRANTED as to counts one, two, three, eight, and ten. Shell's Motions for Summary Judgment with respect to counts seven, nine, eleven and the allocation of damages are DENIED. IT IS SO ORDERED.