**Francis T. McCLEMENTS, Plaintiff,**

v.

**Victoria E. KONG, M.D., Kent Diagnostic Radiology Associates, P.A., and Picker International Sales Corporation d/b/a Picker International, Inc., Defendants.**

**C.A. No. 99C–03–044–JTV.**

Superior Court of Delaware.

Submitted: June 1, 2002.
Decided: Sept. 30, 2002.

---

**15.** *State v. Pusey,* 600 A.2d 32, 35 (Del.1991).  **16.** 11 *Del. C.* § 232.

Stephen A. Hampton, Dover, for Plaintiff.

Jeffrey A. Young, Dover, for Defendants.

## OPINION

VAUGHN, Resident Judge.

Defendant Picker International Sales Corporation ("Picker") seeks summary judgment on the ground that the plaintiff's claim against it is barred by the statute of limitations. The plaintiff underwent a cranial CT scan after he was involved in an automobile accident. The doctor who performed the scan interpreted it as showing a large subdural hematoma. As a result of this finding, a craniotomy was performed. The operation revealed that there was no subdural hematoma and the craniotomy had been done unnecessarily. The plaintiff filed suit within the statute of limitations against the doctor who interpreted the scan and the radiology group with which she was associated, alleging medical negligence on her part. During her deposition, which was taken after the expiration of the statute of limitations as measured from the date of the craniotomy, the doctor who read the scan attributed the error to an unusual characteristic of the scan unit which caused a false indication of a subdural hematoma. The plaintiff then brought suit against Picker, the manufacturer of the unit, alleging various forms of negligence. The issue is whether the "time of discovery" rule allows the plaintiff to bring suit against Picker after the otherwise normal expiration of the statute of limitations.

## STANDARD OF REVIEW

Summary judgment should be rendered if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[1] The facts must be viewed in the light most favorable to the non-moving party.[2] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law to the circumstances.[3] However, when the facts permit a reasonable person to draw but one inference, the

---

1. Superior Court Civil Rule 56(c).

2. *Guy v. Judicial Nominating Comm'n,* 659 A.2d 777, 780 (Del.Super.1995) *Figgs v. Bellevue Holding Co.,* 652 A.2d 1084, 1087 (Del.Super.1994).

3. *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del.1962).

question becomes one for decision as a matter of law.[4]

## THE FACTS

On April 11, 1997, the plaintiff, Francis T. McClements, was injured in an automobile accident. He was taken to Kent General Hospital where a full field cranial CT scan was performed using a PQ 2000 CT System designed and manufactured by Picker. When the scan was done, he was on a backboard. Victoria E. Kong, M.D., the interpreting radiologist, reviewed the cranial CT scan and concluded that the scan showed a large subdural hematoma. Based upon Dr. Kong's finding, Dr. Narayan, the attending neurosurgeon, performed a craniotomy. He found that the plaintiff did not have a subdural hematoma. The doctors contacted a Picker service representative, who could find nothing wrong with the machine. They then contacted a Picker manufacturer's office. A representative from that office informed them that a full field scan of a patient on a backboard can produce an artifact, or false positive, for a subdural hematoma. Neither the doctors at Kent General Hospital nor even the Picker service representative were aware of this machine characteristic. Within a week of the operation, the doctors concluded that what Dr. Kong thought was evidence of a subdural hematoma was, in fact, an artifact consistent with the information given them by the manufacturer's representative.

Picker was well aware prior to April of 1997 that the CT scan unit could produce an artifact if a patient was given a full field scan while on a backboard. In fact, it had been aware of the problem for about four years. It received written complaints of the problem in August 1993, June 1994 and March 1995. The March, 1995 complaint specifically warned Picker of the danger that a patient may undergo an unnecessary craniotomy based upon a mistaken belief that an artifact would be read as a subdural hematoma. In 1995 Picker prepared a Clinical Equipment Update specifically warning users of the CT scan unit of the problem. However, the Update was never sent to Kent General Hospital. Even after it became aware of the plaintiff's operation, Picker still took no steps to notify at least one other Delaware hospital which owned the same Picker CT scan unit of the problem.

In a follow up visit shortly after the procedure, Dr. Narayan told the plaintiff that his craniotomy was unnecessary and that there had been a shadow on his x-ray film which the radiologist had mistaken for a subdural hemorrhage. Dr. Narayan made no mention of the Clinical Equipment Update or of Picker at all.

After the follow up visit with Dr. Narayan, there was no further contact between Mr. McClements and Dr. Narayan or Dr. Kong. On August 13, 1998, counsel for the plaintiff wrote a demand letter to the risk manager for Kent General Hospital, which went unanswered.

Plaintiff filed suit against Dr. Kong and Kent Diagnostic Radiology Associates, Inc., on March 30, 1999. When her deposition was taken on January 12, 2000, Dr. Kong explained what the doctors had learned in the days following Mr. McClements craniotomy and attributed the error to the artifact on the CT scan. This was the first that the plaintiff became aware that the shadow on the scan was an artifact caused by a problem with the machine and that the defendants were placing blame for the incident on Picker. The plaintiff then filed suit against Picker on March 29, 2000.

---

4. *Wootten v. Kiger,* 226 A.2d 238 (Del.1967).

## DISCUSSION

Picker initially moved for summary judgment on the grounds that the plaintiff's claim is barred by the statute of limitations shortly after suit was filed. That motion was denied, without prejudice, to allow the parties to develop a full factual record. In this renewed motion, Picker continues to argue that the "time of discovery" rule does not apply and that the plaintiff's suit was not brought within the applicable statute of limitations. In response, the plaintiff argues that he did file suit within the statute of limitations under the "time of discovery rule," that the plaintiff could not be expected to know or suspect that the unit itself may have been a cause of his injury until he learned it at Dr. Kong's deposition, that Picker's failure to disclose the problem to its customers could be considered willful and wanton, and that Picker should not be permitted to benefit from its cover-up of the problem with its scan unit.

The parties agree that the applicable statute of limitations is 10 *Del. C.* § 8119, which reads as follows:

> No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained; subject, however, to the provisions of § 8127 of this title.

■ Under the time of discovery rule, if an injury is "inherently unknowable" and a plaintiff is blamelessly ignorant of the wrong and injury complained of, the injury is sustained and the statute begins to run when the "harmful effect first manifests itself and becomes physically ascertainable." [5] In this case, the plaintiff's injury—a needless craniotomy—was known to the plaintiff shortly after the procedure.

Once the plaintiff is aware of an injury, whether because the injury was known from the outset, or, if it was inherently unknowable, because the harmful effect has manifested itself and become physically ascertainable, the statute begins to run and continues to run even though the plaintiff may not be aware of any causal connection between the injury and the conduct of a particular potential defendant. [6]

The plaintiff relies primarily upon the cases of *S & R Associates, L.P. v. Shell Oil Co.* [7] and *In Re Asbestos Litigation.* [8] In the *S & R* case, an owner of residential buildings experienced serious and systematic problems with the plumbing system from the time a complex of residential units was constructed. The defendant, Shell Oil Co., manufactured a resin which was used in the manufacture of the plumbing pipes. Eight years after the units were built, the owner brought suit against Shell Oil Co., asserting that it did not realize until then that leaks were caused by defects in the pipes attributable to the resin produced by Shell. The court denied a defense motion for summary judgment based upon the statute of limitations, reasoning that a dispute existed as to when the owner, in the exercise of due diligence, should have known that the plumbing failures were attributable to Shell's resin.

The *S & R* case is distinguishable. The statute of limitations involved in that case

**5.** *Layton v. Allen,* 246 A.2d 794, 798 (Del. 1968).

**6.** *Cole v. League for Planned Parenthood,* 530 A.2d 1119, 1124 (Del.1987); *Mergenthaler v. Asbestos Corp. of America,* 500 A.2d 1357 (Del.Super.1985); *Ison v. E.I. du Pont de Nemours and Company,* 2002 WL 962205 (Del.Super.2002).

**7.** 725 A.2d 431 (Del.Super.1998).

**8.** 673 A.2d 159 (Del.1996).

was 10 *Del. C.* § 8106, which requires that a cause of action be brought within three years after it accrues. When the time of discovery rule is applied to cases under that statute, the time begins to run when a blamelessly ignorant plaintiff becomes aware of facts constituting the basis for the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts.[9] In this case, the statute of limitations runs from the time that the injury's harmful effect first manifests itself or becomes physically ascertainable.

The *In re Asbestos Litigation* case was one which the Delaware Supreme Court recognized as involving an "unusual situation."[10] There the plaintiff had a persistent, subjective belief that he had an asbestos related injury. He underwent physical examinations, but despite his subjective belief, twelve years passed before any medical examination confirmed the presence of asbestosis. Suit was then promptly filed. The trial court granted summary judgment to the defendant on the ground that the statute began to run twelve years before suit, when the plaintiff developed his persistent belief that he had an asbestos related injury. The Supreme Court held, however, on the facts of that case, that the injury was not "physically ascertainable" until it had been medically confirmed. The case has no similarity to this one, where the plaintiff's injury was a known medical fact at all relevant times.

 Since the plaintiff's injury was known from the date of its occurrence, and known by the plaintiff from the time of the follow up visit with Dr. Narayan, the statute of limitations began to run not later than the date of the follow up visit. The plaintiff cannot successfully argue that fraudulent concealment on Picker's part tolled the statute, because it is undisputed that immediately following the plaintiff's operation, the manufacturer's representative from Picker disclosed to the treating physicians the fact that the machine can cause a false positive for a subdural hematoma when a patient is positioned as was Mr. McClements.

Therefore, the statute ran well before March 2000 when suit was filed against Picker.

The defendant's motion for summary judgment is *granted*.

**IT IS SO ORDERED.**

---

**9.** *Becker v. Hamada, Inc.,* 455 A.2d 353, 356 (Del.1982).

