**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

JAMIE C. ARMSTRONG )
)
Plaintiff, )
)
v. ) C.A. NO.: N16C-09-026 AML
)
COUNCIL OF THE DEVON, AND )
THE DEVON CONDOMINIUM, )
)
Defendants. )

Submitted: January 23, 2018
Decided: March 23, 2018

**ORDER**

**Defendants' Motion for Summary Judgment: Granted**
**Plaintiff's Motion for Partial Summary Judgment: Moot**

1.      Plaintiff's claims in this case arise from cracks that developed in 2007 in her condominium unit's ceiling. Defendants are the Devon Condominium and the condominium's governing body, the Council of the Devon (collectively the "Council"). Although Plaintiff repaired the cracks several times, they always reappeared. Nine years after she alerted the Council to the issue, Plaintiff sued the Council, claiming the cracks resulted from the building's common elements and therefore should have been repaired by the condominium. Because Plaintiff's claims are based on a defect that was discoverable more than three years before she

filed her claims, the claims are untimely and the Council is entitled to summary judgment.

**FACTUAL BACKGROUND**

2.      Jamie Armstrong ("Plaintiff") purchased Unit #1615 of the Devon Condominium (the "Unit") from a family member in September 2007.  In a letter written to the Council on December 12, 2007, Plaintiff complained of a "large crack in [her] living room ceiling . . ." ("Ceiling Cracks") that "has expanded and has dropped lower making the ceiling uneven."[1]  In that letter, Plaintiff explained that her family members had repaired the cracks "a few times" with the cracks returning each time.[2]  Plaintiff inquired in 2007 whether the Council was responsible for repairing the Ceiling Cracks.

3.      After the Council denied responsibility for the repairs, Plaintiff hired contractors to fix the Ceiling Cracks.  Although the repairs initially appeared to be successful, the Ceiling Cracks reappeared, causing drywall to fall in the Unit.  Plaintiff had the ceiling repaired "multiple times," but the Ceiling Cracks continued to "resurface."[3]  On September 16, 2013, Plaintiff wrote a second letter to the Council, recounting how the "[l]ast time I wrote to you, you said it was my responsibility to fix [the Ceiling Cracks]."[4]  In the second letter, Plaintiff also

---

[1] Ex. A to D.I. 27 at 1.
[2] *Id.*
[3] Ex. B to D.I. 27 at 1.
[4] *Id.*

2

claimed other unit-owners told her it was the Council's responsibility to fix the Ceiling Cracks.[5]

4. Between 2013 and 2014, Plaintiff listed the Unit for sale, but allegedly could not sell it because of the Ceiling Cracks. In September 2015, Plaintiff leased the Unit to a tenant, but the tenant terminated the lease due to concerns related to the Ceiling Cracks. In August 2015, confronted with Plaintiff's continued complaints and a similar issue in a nearby unit, the Council retained an engineering firm, Jagiasi Engineers, to investigate the issue.[6] After a "limited visual inspection" of the Unit's ceiling construction, performed by accessing the "plenum space" through an access point in the Unit's closet, Jagiasi concluded the Ceiling Cracks were caused by deterioration in the joints between the drywall.[7] In 2016, the Council repaired the Ceiling Cracks in a manner that appears to have resolved the issue.

5. On September 2, 2016, Plaintiff brought this action against the Council for trespass, negligence, and breach of contract. Plaintiff seeks to recover damages suffered through the cost of the initial repair work, the lost rent from the terminated lease, and fees and mortgage interest paid after Plaintiff's failed attempts to sell the Unit. On November 15, 2017, the Council moved for summary

---

[5] *Id.*

[6] Ex. B to Pl.'s Answer Br.

[7] *Id.* at 1-3.

3

judgment based on the statute of limitations. The Council argues Plaintiff had notice of the Ceiling Cracks in 2007, and her claims therefore are barred by the three-year statute of limitations. Plaintiff also moved for partial summary judgment on the issue of Defendants' liability.

## ANALYSIS

6. Summary judgment should be awarded if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8] When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the nonmoving party.[9] The Court will accept "as established all undisputed factual assertions . . . and accept the non-movant's version of any disputed facts. From those accepted facts[,] the [C]ourt will draw all rational inferences which favor the non-moving party."[10] A party seeking summary judgment bears the initial burden of showing that no genuine issue of material fact exists.[11] If the movant makes such a showing, the burden then shifts to the non-moving party to submit sufficient evidence to show that a

---

[8] Super. Ct. Civ. R. 56(c).

[9] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995); *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977).

[10] *Marro v. Gopez*, 1994 WL 45338, at *1 (Del. Super. Jan 18, 1994) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992)).

[11] *Moore v. Sizemore*, 405 A.2d 679, 680-81 (Del. 1979).

4

genuine factual issue, material to the outcome of the case, precludes judgment before trial.[12]

7.  Plaintiff's complaint alleges three counts – trespass, negligence, and breach of contract – all of which are governed by a three-year statute of limitations under 10 *Del. C.* § 8106.[13]  Importantly, "[t]he statute of limitations is calculated from the time of the wrongful act even if plaintiff is ignorant of the cause of action . . . ."[14]  Tort actions accrue at the time of injury, and the statute of limitations begins to run at that time.[15]  The time of injury occurs when "the plaintiff has reason to know that a wrong has been committed."[16]  In Delaware, a breach of contract claim accrues, and the statute of limitations begins to run, when the contract is breached.[17]

8.  Plaintiff alleges the statute of limitations was tolled by (i) Defendants' fraudulent concealment of the facts; (ii) principles of equitable tolling; or (iii) the inherently unknowable nature of the Ceiling Cracks' cause.  All those tolling theories, however, even if applicable to the facts of this case, only apply until a

---

[12] *Id.*; *see also Brzoska*, 668 A.3d at 1363.

[13] 10 *Del. C.* § 8106 ("No action to recover damages for trespass . . . shall be brought after the expiration of 3 years from the accruing of the cause of such action . . . ."). *See Aronow Roofing Co. v. Gilbane Bldg. Co.*, 902 F.2d 1127, 1128 (3d Cir. 2002) ("The claim is subject to Delaware law which provides a three-year limitation for causes of action based upon contracts."); *Ontario Hydro v. Zallea Sys., Inc.*, 569 F.Supp. 1261, 1268 (D. Del. 1983) ("The general and well-settled law of Delaware is that tort actions accrue under 10 *Del.C.* § 8106 . . . .").

[14] *Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F.Supp.2d 546, 563 (D. Del. 2010).

[15] *City of Newark v. Edward H. Richardson Assoc., Inc.*, 375 A.2d 475, 476 (Del. Super. 1977).

[16] *Abdi v. NVR, Inc.*, 2007 WL 2363675, at *3 (Del. Super. Aug. 17, 2007).

[17] *In re Marvel Entm't Grp., Inc.*, 273 B.R. 58, 80 (D. Del. 2002).

person is on inquiry notice of the facts supporting a claim.[18] "Inquiry notice" means a person is aware of facts "sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery."[19] Once a person is on inquiry notice of an injury, the statute begins to run even if that person is unaware of the *cause* of the injury.[20]

9. Here, all Plaintiff's claims accrued in 2007 when the Council denied liability for the Ceiling Cracks. Plaintiff's claims are based on alleged intrusion into the Unit from Common Elements and the Council's failure to repair a problem caused by Common Elements. Plaintiff's first letter to the Council in 2007, however, reveals she was aware the Unit's previous owners repaired the Ceiling Cracks several times, but they continued to reappear and even worsen after repair. Plaintiff argues she did not become aware of the cause of the Ceiling Cracks until 2015, when Jagiasi opined that the cracks likely were caused by structural problems in the Common Elements above the Unit.[21] Plaintiff's argument,

---

[18] *Becker v. Hamada, Inc.*, 455 A.2d 353, 356 (Del. 1982); *Burrell v. AstraZeneca LP*, 2010 WL 3706584, at *5-7 (Del. Super. Sept. 20, 2010); *Weiss v. Swanson*, 948 A.2d 433, 451 (Del. Ch. 2008); *Abdi*, 2007 WL 2363675, at *3; *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007).

[19] *Becker*, 455 A.2d at 356; *see also Burrell*, 2010 WL 3706584, at *5.

[20] *McClements v. Kong*, 820 A.2d 377, 380 (Del. Super. 2002); *Abdi*, 2007 WL 2363675, at *4.

[21] At oral argument, the Council argued for the first time that the articles governing the Devon (the "Declarations") expressly define ceilings as a common element, and Plaintiff therefore was on inquiry notice of the Council's repair obligation because the Declarations are a matter of public record. Plaintiff argued the Declarations are ambiguous and, in any event, the Council waived the argument by failing to raise it in the briefs. Ironically, the parties' respective arguments on this point largely are inconsistent with their arguments relating to Plaintiff's partial summary judgment motion. In any event, because I conclude Plaintiff was on inquiry notice for

6

however, ignores settled law regarding tolling. The undisputed facts of record show Plaintiff was aware in 2007 that the Ceiling Cracks existed and had persisted for a number of years in spite of attempted repairs. By that date, Plaintiff was aware of facts that, if pursued, would lead to the discovery of the claims alleged in the complaint. Accordingly, even if Plaintiff could establish that any tolling doctrine applies to her claims, the statute began to run, at the latest, in 2007, when she was on inquiry notice of the claims.

10. The facts in this case are similar to those in *Abdi v. NVR, Inc.*[22] and *Becker v. Hamada, Inc.*[23] In *Abdi*, the plaintiffs suffered damages after a back-up caused sewage to flood their basement through a toilet, shower, and sink.[24] The *Abdi* plaintiffs argued the limitations period was tolled because they did not know the sewer back-up caused the flooding. The Court disagreed, holding that although the plaintiffs in that case did not know the cause of the damage, the flooding put them on inquiry notice that, if pursued, would have led them to discover the cause.

11. Similarly, in *Becker*, the plaintiff sued its roofing suppliers for negligence after persistent leaks caused damages to plaintiff's shopping mall.[25] The *Becker* plaintiff brought its claim in 1980, six years after the leaks began, and

reasons unrelated to the language in the Declarations, I need not reach the merits of this alternate argument.
[22] 2007 WL 2363675 (Del. Super. Aug. 17, 2007).
[23] 455 A.2d 353 (Del. 1982).
[24] *Abdi*, 2007 WL 2363675, at *4.
[25] *Becker*, 455 A.2d at 356.

7

four years after the plaintiff hired contractors to fix the roof. The plaintiff argued the leaks' cause was "inherently unknowable" until 1979 when they attempted to pinpoint the cause. The Supreme Court, however, held "the existence of a roof defect was reasonably discoverable before 1976, even though [the plaintiff] did not attempt to pinpoint the exact cause of the leaks until 1979."[26]

12. Both the *Abdi* and *Becker* courts held plaintiffs were on inquiry notice of defendants' allegedly negligent actions because they had notice of the damages that, if pursued, would have led both plaintiffs to discover the cause of the damages. Notice of the damages, however, may not amount to inquiry notice of a claim if reasonably alternative causes or fraudulent concealment inhibit a person's ability to discover the cause of the damages.

13. For example, in *S&R Assoc., L.P. v. Shell Oil Co.*,[27] a case on which Plaintiff relies, persistent plumbing leaks in an apartment complex were caused by inherent defects in the plumbing materials. Plaintiff initially thought the leaks were caused by faulty installation.[28] After discussing the problem with other property managers, however, Plaintiff discovered the leaks may have occurred due to inherent defects in the polybutylene piping system.[29] The Court denied summary judgment for defendants because a factual dispute existed as to whether

---

[26] *Id.*
[27] 725 A.2d 431 (Del. 1998).
[28] *Id.* at 439.
[29] *Id.*

8

plaintiff should or could have attributed the plumbing leaks to defective plumbing materials instead of faulty installation.[30]

14. Unlike *S&R*, however, no fraudulent concealment or alternative explanation inhibited Plaintiff from discovering the cause of the Ceiling Cracks in this case. In fact, the cause of the Ceiling Cracks was discovered after a "limited visual inspection" of the plenum space from an area accessible from Plaintiff's Unit. Unlike *S&R*, there is no question that Plaintiff, had she exercised due diligence, could have discovered the Ceiling Cracks' cause. Accordingly, and consistent with the *Abdi* and *Becker* holdings, Plaintiff's claim accrued in 2007 and is now time-bared.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment is **MOOT. IT IS SO ORDERED.**

Abigail M. LeGrow, Judge

Original to Prothonotary
cc:   Richard L. Abbott, Esquire
      Kevin J. Connors, Esquire

---

[30] *Id.*

9